Kristian Roggendorf, OSB #013990
ROGGENDORF LAW, LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
(503) 726-5927
kr@roggendorf-law.com

Eugene Volokh, Cal. Bar #194464, *Pro hac vice admission pending*
Gary T. Schwartz Professor of Law
SCOTT & CYAN BANISTER FIRST AMENDMENT CLINIC
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

*Of Counsel to Prospective* Amicus *ACLU*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MATS JÄRLSTRÖM,

*Plaintiff,*

v.

CHRISTOPHER D. ALDRIDGE, WILLIAM J. BOYD, SHELLY MCDUQUETTE, KEN W. HOFFINE, JASON KENT, LOGAN T. MILES, RON SINGH, DAVE M. VAN DYKE, AMIN WAHAB, OSCAR J. ZUNIGA JR., in their official capacities as members of the Oregon State Board of Examiners for Engineering and Land Surveying,

*Defendants.*

Case No.: 3:17-cv-00652-SB

MOTION TO APPEAR AS *AMICUS CURIAE* OF ACLU OF OREGON AND TO FILE MEMORANDUM IN SUPPORT OF PLAINTIFF MATS JÄRLSTRÖM

* Counsel would like to thank Brandon Amash, Sarah Burns, and Kristin Halsing, UCLA School of Law students who worked on this brief.

## TABLE OF CONTENTS

Table of Contents ........ ii

Motion ........ 1

Memorandum ........ 1

I. Summary of Argument ........ 1

II. Argument ........ 3

A. The Board's regulation was content-based because it banned Järlström's speech based on its message ........ 3

B. Järlström's speech does not fit within the professional-client speech exception to First Amendment protection ........ 4

1. Advocating for a new stoplight timing formula was not professional-client speech because there was no personal nexus between Järlström and any particular client ........ 4

2. Oregon may not punish Järlström for calling himself an "engineer" ........ 7

C. The Board's restriction on Järlström's speech is unconstitutional because it fails strict scrutiny ........ 8

III. Conclusion ........ 10

Certificate of Service ........ 11

## TABLE OF AUTHORITIES

### Cases

*Accountants Soc. of Va. v. Bowman*, 860 F.2d 602 (4th Cir. 1988)........................................... 6

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ........................................................................... 8

*Bassett v. State Fish & Wildlife Comm'n*, 556 P.2d 1382 (Or. Ct. App. 1976)............................ 7

*Brown v. Hartlage*, 456 U.S. 45 (1982)............................................................................. 9

*Friedman v. Rogers*, 440 U.S. 1 (1979)............................................................................ 8

*Lowe v. SEC*, 472 U.S. 181 (1985) ............................................................................... 2, 4

*Maceluch v. Wysong*, 680 F.2d 1062 (5th Cir. 1982) ........................................................ 8

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) ................................................................. 3

*Moore-King v. Cnty. of Chesterfield*, 708 F.3d 560 (4th Cir. 2013)........................................ 6

*Peel v. Attorney Reg. & Discip. Comm'n of Ill.*, 496 U.S. 91 (1990).................................... 2, 8

*Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2013)............................................................... 5

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................................................ 3

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)......................................................... 2, 3, 8

*Serafine v. Branaman*, 810 F.3d 354 (5th Cir. 2016) .............................................. 6, 7, 8, 9

*Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506 (D.C. Cir. 1983)................................................................................................................. 7

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ............................................. 3

*United States v. Stevens*, 559 U.S. 460 (2010)................................................................... 3

*Whitney v. California*, 274 U.S. 357 (1927) ..................................................................... 9

*Young v. Ricketts*, 825 F.3d 487 (8th Cir. 2016).................................................................. 6

### Statutes

ORS 672.005(1)(b) .......................................................................................................... 3

ORS Ch. 672 .......... 2, 7

**Other Authorities**

Jon D. Michaels, *An Enduring, Evolving Separation of Powers*, 115 Colum. L. Rev. 515, 547 (2015) .......... 7

**Regulations**

Or. Admin. R. 820-010-0730(3)(a) .......... 7

## MOTION

The American Civil Liberties Union of Oregon ("ACLU") is a statewide affiliate of a national, nonprofit, nonpartisan organization with approximately 43,000 members in Oregon dedicated to preserving and advancing the civil rights and liberties guaranteed or reserved to the people by the Oregon and United States constitutions. Since its founding in 1920, the nationwide organization has vigorously defended free speech. The ACLU has steadfastly pursued that same mission for the speech rights of Oregonians since 1955 through legislation, litigation, and public education. Decades of experience have convinced us that a strong First Amendment is not only compatible with freedom and equality but essential to its pursuit. To preserve the core value that an individual should be free to criticize his local, state, and federal government without penalty, the ACLU and its sister affiliates have appeared in countless cases throughout the country.

Accordingly, the proper resolution of this case is a matter of substantial interest to the ACLU and its Oregon members. The ACLU therefore seeks leave to file the *amicus* memorandum below, in order to present a position as to the correct rule of law.

## MEMORANDUM

### I. Summary of Argument

Mats Järlström has used his training as an engineer to argue to the government and to the public that the yellow-light timing on traffic lights is poorly calculated. Such speech by a citizen about how the government should operate—a quintessential matter of public concern—is maximally protected by the First Amendment's guarantees of free speech and petition. In fact, Järlström's training as an engineer makes him especially knowledgeable about proper timing and stopping distances, so his speech is especially valuable to public debate.

Yet the Oregon State Board of Examiners for Engineering and Land Surveying has punished Järlström's advocacy to the government, as constituting the "practice of engineering" without a license. *See* ORS Ch. 672. The Board further argues that even Järlström's calling himself an engineer is illegal—though he is indeed trained as an engineer—because he is not licensed by the Board.

Oregon has considerable authority to regulate professionals' speech to or on behalf of particular clients. But Järlström's speech does not fit within the professional-client exception to First Amendment protection, because he has not "take[n] the affairs of a client personally in hand." *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J., concurring). When no client's life, liberty, health, property, or livelihood is at risk, any state interest in protecting professionals' clients from those who have not been licensed by the state is not implicated. *Id.* at 210.

Nor may Oregon prohibit Järlström from calling himself an engineer. The state is entitled to prohibit misleading commercial advertising, *Peel v. Attorney Reg. & Discip. Comm'n of Ill.*, 496 U.S. 91, 100 (1990) (plurality op.); *id.* at 111 (Marshall, J., concurring in the judgment), but because Järlström was not attempting to sell his services to potential clients, his speech was not advertising.

Because the Board restricted Järlström's speech based on "the topic [he] discussed" (engineering), the restriction is content-based and must thus pass strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). And the restriction cannot survive such scrutiny because any government interest in protecting itself from being deceived by incompetent professionals—the only interest implicated here—could be served by the less restrictive alternative of simply consulting the government's own engineers.

## II. Argument

### A. The Board's regulation was content-based because it banned Järlström's speech based on its message

"Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227. Put another way, a law is "content based if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (citation omitted).

Enforcing Oregon's engineering-practice law, as interpreted by the Board, "depend[s] entirely on the communicative content" of Järlström's speech. *Reed*, 135 S. Ct. at 2227. If speech communicates "special knowledge of the mathematical, physical and engineering sciences" relating to "any public or private utilities, structures, buildings, machines, equipment, processes, works or projects," ORS 672.005(1)(b), then the speaker is not allowed to speak to the government. To enforce this restriction, authorities must examine the content of speech.

Thus, the statute is a content-based speech restriction and is therefore unconstitutional unless (1) it is limited to speech that fits within a narrow exception to First Amendment protection, or (2) it is narrowly tailored to serve a compelling government interest. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382-83, 395 (1992). Courts have only "permitted restrictions upon the content of speech in a few limited areas," *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation omitted), and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible," *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

**B. Järlström's speech does not fit within the professional-client speech exception to First Amendment protection**

**1. Advocating for a new stoplight timing formula was not professional-client speech because there was no personal nexus between Järlström and any particular client**

When engineers, lawyers, doctors, or any other professionals are—on their own behalf—urging government authorities to change the law or how the law is enforced, they are engaging in fully constitutionally protected speech. When there is no "personal nexus between [a] professional and client," no professional-client speech exception to First Amendment protection applies, and speech is fully constitutionally protected. *Lowe v. S.E.C.*, 472 U.S. 181, 232 (1985) (White, J., concurring). This is because when a speaker has not "take[n] the affairs of a client personally in hand," *id.*, the state's interest in protecting clients from "fraud, deception, or overreaching" is diminished and the state thus cannot justify restricting the speech, *id.* at 210.

Järlström has not "take[n] the affairs of a client personally in hand," *id.* at 232 (White, J., concurring), but simply argued for how he thinks the law ought to be enforced. He was not jeopardizing the welfare of any particular client or advising any client.

Instead, Järlström's speech was between Järlström and the Oregon State Board of Examiners for Engineering and Land Surveying, the National Council of Examiners for Engineering and Surveying, the creator of a well-known traffic signal formula, the television show *60 Minutes*, and a Washington County Sheriff. Järlström complained about the way local traffic stoplight timing is calculated and in some instances urged the government to implement a new timing formula he created. Rather than communicating to or on behalf of a client, Järlström communicated his own views to various government boards and to those who might convey those views to the government and to the public.

This is exactly like the hypothetical scenario that the Ninth Circuit envisioned in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2013). "[W]here a professional is engaged in a public dialogue, First Amendment protection is at its greatest." *Id.* at 1227. Such a speaker "is entitled to robust protection under the First Amendment—just as any person is—even though the state has the power to regulate [the speaker's profession]." *Id.*

"[C]ommunicating to the *public* on matters of *public concern* lies at the core of First Amendment values." *Id.* (emphasis in original). Thus, for example, "outside the doctor-patient relationship, doctors are constitutionally equivalent to soapbox orators and pamphleteers, and their speech receives robust protection under the First Amendment." *Id.* at 1227-28. Though the *Pickup* decision ultimately upheld a law banning gay conversion therapy for children, it did so precisely because the law only regulated the conduct of treating a particular patient, rather than "public dialogue." *Id.* at 1227.

Järlström's situation precisely fits the *Pickup* example of fully protected speech. Järlström's advocacy does not involve taking a client's interests in hand. Instead, it is aimed at communicating on a matter of public concern to the public, the government, and others able to influence the government.

Indeed, Oregon has even less of an interest in restricting Järlström's speech than it would as to a doctor who is "publicly advocat[ing] a treatment that the medical establishment considers outside the mainstream, or even dangerous," the example of fully protected speech that *Pickup* offered, *id.* Järlström is trying to change the behavior of the government, not of ordinary citizens. If Oregon thinks Järlström is offering dangerous advice, all it needs to do to avoid this harm is decline to follow that advice. The government should actually welcome extra input from speakers like Järlström; at best, such input is helpful, and, at worst, the government can simply ignore it.

All federal circuits that have considered professional speech restrictions have upheld them only when they restrict professional speech to or on behalf of a client, rather than speech to the public. *See Young v. Ricketts*, 825 F.3d 487 (8th Cir. 2016) (upholding a requirement that real estate brokers be licensed, but in situations that involved actual client contact, not just giving information to the public); *Accountants Soc. of Va. v. Bowman*, 860 F.2d 602 (4th Cir. 1988) (upholding a ban on those without a license identifying themselves as CPAs, when the statute was limited to communications with and on behalf of clients); *Moore-King v. Cnty. of Chesterfield*, 708 F.3d 560 (4th Cir. 2013) (upholding a licensing requirement for fortune tellers where the speech at stake involves a personalized reading for a paying client).

And when a restriction on speech by professionals has extended beyond professional-client speech, it has been struck down: The Fifth Circuit in *Serafine v. Branaman*, 810 F.3d 354 (5th Cir. 2016), held that people who have psychology training but are not licensed psychologists could not be stopped from calling themselves "psychologist[s]" in political campaigns, *id.* at 359-60. "Assuming that the professional speech doctrine is valid, its application should be limited. 'There is a difference, for First Amendment purposes, between . . . professionals' speech to the public at large versus their direct, personalized speech with clients.'" *Id.* at 359. "Any interest the government can claim in protecting clients from manipulation or exploitation by a psychotherapist fails when the psychotherapist is no longer speaking to the client in her capacity as such." *Id.* at 360. Likewise, any interest Oregon has in protecting clients from being manipulated by unlicensed engineers fails when the engineer is not speaking to a client at all.

Indeed, the government should have an interest in *encouraging* everyone, whether licensed engineers or not, to speak to it about their views on law enforcement. Administrative procedure rules, for instance, aim to encourage agencies to solicit as much information as possible from the

public. This is why administrative law affirmatively seeks to create "the opportunity for an agency to receive the benefit of the thinking of the public on the matters being considered," such as through notice and comment rules. *Bassett v. State Fish & Wildlife Comm'n*, 556 P.2d 1382, 1384 (Or. Ct. App. 1976); *see also Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983) (taking a similar view as to federal administrative law).

"[E]mpowered and often highly motivated members of civil society use administrative procedures to educate and hold agency leaders (and civil servants) accountable, limiting opportunities for those officials to proceed arbitrarily, capriciously, or abusively," and thus serve as an institutional check on the administrative state. Jon D. Michaels, *An Enduring, Evolving Separation of Powers*, 115 Colum. L. Rev. 515, 547 (2015). Restricting Järlström's speech to the government about a matter of public concern thus disserves government interests in sound decisionmaking, as well as violating Järlström's First Amendment rights.

**2. Oregon may not punish Järlström for calling himself an "engineer"**

The Board also found that Järlström violated ORS Ch. 672 and Or. Admin. R. 820-010-0730(3)(a) because in his communications to the Board and with the media he called himself an engineer, despite not being licensed as one in Oregon. But, like his advocacy for a revised timing formula for yellow traffic lights, Järlström's description of himself as an engineer is fully protected speech. As the Fifth Circuit noted in *Serafine*, "a lawyer who is not barred in a particular state does not cease to be a lawyer because he is merely prohibited from practicing in that state." 810 F.3d at 362, n.16. The Fifth Circuit went on to use this reasoning to uphold a trained psychologist's right to call herself a psychologist in a political campaign, even when she was not licensed by the state to practice psychology. *Id* at 359-60. What is true of lawyers and psychologists is also true of engineers.

The government may have some discretion to restrict how professionals describe themselves in *advertising*, to protect the public from "false, deceptive, and misleading" characterizations of the speaker's identity or credentials. *See, e.g.*, *Friedman v. Rogers*, 440 U.S. 1, 9 (1979); *Maceluch v. Wysong*, 680 F.2d 1062, 1069 (5th Cir. 1982). But even in these situations the government may only restrict actually or inherently misleading descriptions. *See Peel*, 496 U.S. at 110-11 (plurality op.) (holding that the government may not limit lawyers from truthfully stating that they had been certified as specialists, even when there was potential that this would mislead some prospective clients); *id.* at 111-12 (Marshall, J., concurring in the judgment) (taking the same view).

And when it comes to political speech such as Järlström's, the government cannot ban a person who is educated as an engineer from calling himself an engineer. The government's "power to restrict the use of titles in the commercial context" is entirely "inapplicable" to political speech. *Serafine*, 810 F.3d at 361. If the state is concerned that even political advocacy may indirectly reach prospective clients—that listeners "will somehow be converted from political supporters to clients" by hearing the speaker's professional credentials—the correct remedy "is for the Board to bring an enforcement action against [the professional] for engaging in the practice of [the profession] (once [he or] she is actually treating such clients), not to suppress [the] . . . speech." *Id.*

### C. The Board's restriction on Järlström's speech is unconstitutional because it fails strict scrutiny

Content-based restrictions on political speech—such as on speech about changes to law enforcement practices—must satisfy strict scrutiny, which requires that the restriction be the least restrictive means for serving a compelling government interest. *Reed*, 135 S. Ct. at 2226; *see also Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004). Here, even if there is a compelling interest in preventing the government from being misled by supposedly expert speech, the government has a

simple alternative that is far less restrictive alternative than restricting such speech: asking its own engineers.

In political debates, "[t]he preferred First Amendment remedy" for erroneous speech is "more speech, not enforced silence." *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)). "[B]ecause the state's interest in proscribing misleading speech is limited in the political context, and because the Board's goal of preventing deception can be served by other means—the vigorous public debate and scrutiny that accompany political campaigns," or, in this case, that accompany political advocacy for changes to government action—the speech restriction in this case "is unconstitutional as applied to [Järlström]." *Serafine*, 810 F.3d at 362.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III. Conclusion

People must be free to argue that the law should be enforced in a different and better way. Indeed, such arguments are especially valuable when they come from people who have specialized training and expertise. If the government is worried that such arguments might be misleading, it has its own experts who can evaluate the arguments, and speak out against those arguments if necessary. That is how debate about public policy should work—not through suppressing constitutionally protected speech such as Järlström's.

DATED this 20th day of May, 2017.

**ROGGENDORF LAW LLC**

s/ Kristian Roggendorf
Kristian Roggendorf, OSB #013990
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
(503) 726-5927
kr@roggendorf-law.com

**SCOTT & CYAN BANISTER FIRST AMENDMENT CLINIC**

Eugene Volokh, Cal. Bar #194464
*Pro hac vice admission pending*
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

*Of Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that I have on May 20, 2017, served a true and correct copy of this Motion to Appear as *Amicus Curiae* of ACLU of Oregon and to File Memorandum in Support of Plaintiff Mats Järlström, on the following counsel for all parties through the Court's CM/ECF filing system:

Samuel B. Gedge
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
sgedge@ij.org

Christina Beatty-Walters
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
tina.beattywalters@doj.state.or.us

DATED this 20th day of May, 2017.

**ROGGENDORF LAW LLC**

*s/ Kristian Roggendorf*
Kristian Roggendorf, OSB #013990
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
(503) 726-5927
kr@roggendorf-law.com