William J. Ohle (OSB 913866)†
SCHWABE, WILLIAMSON & WYATT P.C.
PacWest Center
1211 SW Fifth Avenue, Suite 1900
Portland, OR  97204
Phone:   (503) 222-9981
E-mail:   wohle@schwabe.com

Samuel B. Gedge (VA Bar No. 80387)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA  22203
Phone:   (703) 682-9320
E-mail:   sgedge@ij.org

*Attorneys for Plaintiff*

†   Designated local counsel
*   Admitted *pro hac vice*


# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| MATS JÄRLSTRÖM, | Case No.: 3:17-cv-00652-SB |
| Plaintiff, | |
| v. | |
| CHRISTOPHER D. ALDRIDGE, WILLIAM J. BOYD, DAREN L. CONE, SHELLY MC DUQUETTE, JASON J. KENT, LOGAN T. MILES, RON SINGH, DAVE M. VAN DYKE, SEAN W. ST. CLAIR, AMIN WAHAB, and OSCAR J. ZUNIGA JR., in their official capacities as members of the Oregon State Board of Examiners for Engineering and Land Surveying, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT** **REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................2

I.    The Board has no right to limit the scope of relief in this lawsuit...........................3

    A.    The Board advances a narrow view of as-applied relief that would not
          provide Mats Järlström all the as-applied relief he actually seeks...............4

    B.    Even if the Board conceded all the as-applied relief that Mats
          seeks—and it has not—Mats has the right to seek facial relief as well.......8

    C.    The Board's proposed judgment is inconsistent with Rule 65 .................14

II.   This case should be decided consistent with the Federal Rules, not based on the
      defendants' preferences ........................................................................15

CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*,
    482 U.S. 569 (1987) ............................................................................ 12

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
    492 U.S. 469 (1989) ............................................................................ 14

*Briggs v. Merck Sharp & Dohme*,
    796 F.3d 1038 (9th Cir. 2015) ............................................................. 3

*Brockett v. Spokane Arcades, Inc.*,
    474 U.S. 491 (1985) ............................................................................ 10

*BSA, Inc. v. King County*,
    804 F.2d 1104 (9th Cir. 1986) ........................................................... 13

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ........................................................................... 3

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ............................................................................ 12

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) .............................................................................. 6

*Del Webb Communities, Inc. v. Partington*,
    652 F.3d 1145 (9th Cir. 2011) ........................................................... 15

*Diaz v. First Am. Home Buyers Prot. Corp.*,
    732 F.3d 948 (9th Cir. 2013) ................................................................ 3

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ............................................................................ 17

*Elend v. Sun Dome, Inc.*,
    370 F. Supp. 2d 1206 (M.D. Fla. 2005),
    *aff'd*, 471 F.3d 1199 (11th Cir. 2006) .............................................. 15

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) .............................................................. 15

*Gates v. Towery*,
    430 F.3d 429 (7th Cir. 2005) .............................................................. 18

*Genesis Healthcare Corp. v. Symczyk,*
    569 U.S. 66 (2013)............................................................................ 3, 8

*Hill v. Colorado,*
    530 U.S. 703 (2000).......................................................................... 11

*Jews for Jesus, Inc. v. Port of Portland,*
    No. 3:04-cv-00695-HU, 2005 WL 1109698 (D. Or. May 5, 2005),
    *aff'd*, 172 F. App'x 760 (9th Cir. 2006)............................................ 8

*Lind v. Grimmer,*
    30 F.3d 1115 (9th Cir. 1994) ....................................................... 9, 10

*Members of City Council of L.A. v. Taxpayers for Vincent,*
    466 U.S. 789 (1984).......................................................................... 11

*Microsoft Corp. v. U.S. Dep't of Justice,*
    233 F. Supp. 3d 887 (W.D. Wash. 2017)................................... 13–14

*Moore-King v. Cty. of Chesterfield,*
    708 F.3d 560 (4th Cir. 2013) ........................................................... 6

*Nat'l Inst. of Family & Life Advocates v. Harris,*
    839 F.3d 823 (9th Cir. 2016),
    *cert. pending* No. 16-1140 (U.S. pet. filed Mar. 20, 2017)............. 17

*New York v. Ferber,*
    458 U.S. 747 (1982)............................................................................ 9

*Nunez v. City of San Diego,*
    114 F.3d 935 (9th Cir. 1997) ....................................................... 9, 12

*Nyberg v. Portfolio Recovery Assocs., L.L.C.,*
    No. 3:15-cv-01175-PK, 2017 WL 1055962 (D. Or. Mar. 20, 2017),
    *appeal docketed*, No. 17-35315 (9th Cir. Apr. 11, 2017) .................. 3

*Peel v. Att'y Registration & Disciplinary Comm'n of Ill.,*
    496 U.S. 91 (1990)............................................................................ 17

*Powell's Books, Inc. v. Kroger,*
    622 F.3d 1202 (9th Cir. 2010) ........................................................ 12

*Topaz v. Or. Bd. Exam'rs for Eng'g & Land Surveying,*
    297 P.3d 498 (Or. Ct. App. 2013)................................................... 6

*Tucker v. State of Cal. Dep't of Educ.*,
    97 F.3d 1204 (9th Cir. 1996) ................................................................... 1, 13

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994) ...................................................................................... 17

*United States v. Stevens*,
    559 U.S. 460 (2010) .................................................................... 4, 7, 8, 11, 12

*United States v. Williams*,
    553 U.S. 285 (2008) ..................................................................................... 1, 8

*Waters v. Barry*,
    711 F. Supp. 1125 (D.D.C. 1989) .................................................................. 9

*Whole Woman's Health v. Hellerstedt*,
    136 S. Ct. 2292 (2016) ............................................................................... 8, 14

*Yniguez v. Arizonans for Official English*,
    69 F.3d 920 (9th Cir. 1995) (en banc),
    *vacated*, 520 U.S. 43 (1997) ....................................................................... 13

## RULES

Fed. R. Civ. P. 55 ............................................................................................ 18

Fed. R. Civ. P. 65(d)(1)(B)–(C) ...................................................................... 14

Fed. R. Civ. P. 68 ............................................................................................ 18

## OTHER AUTHORITIES

Answer Brief, *Topaz v. Or. Bd. Exam'rs for Eng'g & Land Surveying*,
    297 P.3d 498 (Or. Ct. App. 2013) .................................................................. 6

Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*,
    99 Cal. L. Rev. 915 (2011) .......................................................................... 14

Final Order by Default, *In the Matter of Dale La Forest*,
    Case No. 2697 (Aug. 14, 2015) ...................................................................... 6

Erika Schutzman, *We Need Professional Help: Advocating for A Consistent Standard of
    Review When Regulations of Professional Speech Implicate the First Amendment*,
    56 B.C. L. Rev. 2019 (2015) .......................................................................... 6

Charles Alan Wright *et al.*, 11A Fed. Prac. & Proc. Civ. § 2955 (3d ed.) ............................. 14, 15

## INTRODUCTION

The Board's motion for entry of judgment would provide Plaintiff Mats Järlström with none of the facial relief his complaint requests and with only incomplete as-applied relief.  For that reason, the motion should be denied.  In our adversarial system, it is the plaintiff—not the defendant—who decides whether to settle for something less than full relief.  Based on the pleadings, a live dispute remains about how this litigation should be resolved.  Thus, and in accordance with the Federal Rules, Mats should have the opportunity to develop a record and to make his case for all the relief he seeks.  The Court should deny the Board's motion and allow this case to proceed.

As alleged in Mats's complaint, Oregon's Professional Engineer Registration Act is unconstitutional because it restricts core First Amendment activities, including testimony in court and in public meetings, statements in voter guides, political ads, magazine articles, and even—as Mats experienced—e-mails to public officials, media outlets, and the Board itself.  *See, e.g.*, Compl. (Dkt. No. 1) ¶¶ 1–2, 57–61, 75–76; *see also* Compl. Ex. 4 (Dkt. No. 1-4).  In First Amendment cases, "a statute is facially invalid if it prohibits a substantial amount of protected speech," *United States v. Williams*, 553 U.S. 285, 292 (2008), and the statute in this case does precisely that.  Along with seeking facial relief, Mats also alleges that Oregon's engineering laws are unconstitutional as applied to specific speech he wishes to engage in.  Compl. ¶¶ 107, 112, 118, 123, 129, 133–34, 140, 144.

The Board acknowledges that it violated Mats's rights in the past.  But its answer and its proposed judgment concede virtually none of the relief requested in his complaint.  The Board denies that the challenged laws are unconstitutional on their face.  And it also contends that Mats loses all right to seek facial relief because the Board is willing to concede some as-applied relief.  That is wrong as a matter of law.  *See, e.g.*, *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204,

1216 n.10 (9th Cir. 1996) ("A party whose speech may not be constitutionally prohibited may also challenge a statute as overbroad if the speech of others would be chilled.").  In any event, despite the Board's professing to "admit liability on Plaintiff's as-applied First Amendment challenges," Defs.' Mot. (Dkt. No. 43) at 2, the answer and proposed judgment do no such thing.  In the Board's view, Mats can speak freely about traffic lights and call himself an "engineer"—unless the Board decides he is subject to punishment for communicating in the "context" of "professional or commercial speech."  *See* Proposed J. (Dkt. No. 43-1) ¶ 2.  Those terms are undefined, and the Board has used them to punish speech, like Mats's, that is fully protected by the First Amendment.  Put simply, the Board proposes a judgment that leaves it free to punish Mats any time it thinks it can do so lawfully.  That promise to self-police offers no security, particularly in light of the Board's history of enforcement.

At base, it is what the Board does *not* say that is most revealing: The Board cites no Federal Rule in support of its motion.  That is because neither the Federal Rules nor our adversarial system allows a defendant to shortchange the full measure of requested relief by suggesting something less than full relief.  Here, the Board's preferred judgment provides nothing near the complete relief Mats's complaint seeks.  And the Board's filings to date only underscore the parties' outstanding factual and legal disputes, which preclude a judgment on the pleadings alone.  As a result, this motion is simple.  Mats seeks facial and as-applied relief.  The Board denies that he is entitled to that relief.  The case should therefore proceed like any other.

## ARGUMENT

The Board's motion should be denied because it has no basis in law.  In rare instances, to be sure, the federal courts "may have 'discretion to halt a lawsuit by entering judgment for the plaintiff when the defendant unconditionally surrenders and only the plaintiff's obstinacy or

madness prevents her from accepting total victory.'" *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 955 (9th Cir. 2013) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 85 (2013) (Kagan, J., dissenting)).  But "the court may not take that tack when the supposed capitulation in fact fails to give the plaintiff all the law authorizes and she has sought." *Genesis Healthcare Corp.*, 569 U.S. at 85 (Kagan, J., dissenting); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016) (adopting Justice Kagan's reasoning).  The courts "may not 'transform plaintiffs from masters of their complaints into servants of defendants' litigation strategy.'" *Nyberg v. Portfolio Recovery Assocs., L.L.C.*, No. 3:15-cv-01175-PK, 2017 WL 1055962, at *3 (D. Or. Mar. 20, 2017) (quoting *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1049 (9th Cir. 2015)), *appeal docketed*, No. 17-35315 (9th Cir. Apr. 11, 2017).

By inviting the Court to end this case prematurely—and on the government's terms—the Board ignores these principles.  The Board has not unconditionally surrendered; its proposed judgment even provides expressly that "[a]ll other relief requested is denied."  Proposed J. ¶ 3. Rather, the Board's motion is a maneuver to cabin this Court's review of Oregon's engineering statute.  Far from granting Mats "total victory," *Diaz*, 732 F.3d at 955, the Board's concessions do not afford the security even of an as-applied judgment (Section I.A, below).  And regardless, Mats still would be entitled to make his case for why facial invalidation is warranted (Section I.B).  Moreover, the Board's preferred judgment also raises grave questions under Rule 65 (Section I.C.).  There is thus a live dispute about the appropriate relief in this case, and the numerous contested statements in the Board's motion only highlight why the case should be resolved through the normal adversarial process (Section II).

I.      **The Board has no right to limit the scope of relief in this lawsuit.**

By admitting Mats's entitlement to as-applied relief, the Board contends, it can take the question of facial validity off the table entirely.  Yet that theory falters at the starting gate,

because the Board has not in fact conceded that Mats is entitled to as-applied relief. Even if it had, Mats would still have the right to show that the challenged laws violate the First Amendment on their face. Whatever the Board may prefer, Mats has standing to litigate facial relief and he has properly pleaded all the relief to which he is entitled. Like any other plaintiff, he has the right to make his case.

### A.    The Board advances a narrow view of as-applied relief that would not provide Mats Järlström all the as-applied relief he actually seeks.

The Board's motion asserts that it "admit[s] liability on Plaintiff's as-applied First Amendment challenges," Defs.' Mot. at 2, but the Board's answer and proposed judgment reflect a far narrower concession. The Board acknowledges that it violated Mats's rights in the past. But this case is not about the Board's past actions; it is about the challenged statutes' unconstitutional impact on future speech. And on that issue, the Board's assurances fall far short of the as-applied relief Mats requests in his complaint. The Board concedes no declaratory relief about the future, only a declaration as to its past actions—something Mats never asked for. And its proposed injunctive relief—like the admissions in its answer—leaves the Board virtually unchecked power to resume violating Mats's First Amendment rights in the future.

The pleadings highlight the limits of the Board's concessions. The Board's answer maintains that its laws are constitutional on their face, *see, e.g.*, Answer ¶ 84, but that the agency won't enforce against Mats again unless it thinks it can lawfully do so, *see, e.g.*, *id.* ¶¶ 68–69. That is a hollow assurance. *Cf. United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). The complaint alleges, for example, that Mats "wishes to speak and write publicly . . . on his ideas and theories about traffic-light timing" but that if he does so, "he risks further Board investigations and punishment." Compl. ¶¶ 89, 90. In response, the Board

"den[ies] that Mr. Jarlstrom will be subjected to punishment"—but only if certain criteria are met.  Answer ¶ 68.  According to the Board, Mats's future speech would need to replicate "the activities that Defendants admit he has engaged in" previously.  *Id.*  And even then, the Board reserves the right to punish him "to the extent that these activities . . . involve any commercial or professional speech."  *Id.*  "Commercial" and "professional" are terms the Board does not define, but they are ones the Board has in the past construed to target core First Amendment activity.  The Board also "retains investigative authority" for anything Mats might say, *see id.*, even though Mats alleges that the threat of Board investigations will chill his future speech, *see* Compl. ¶¶ 89–91, 100–01, 114; *see also id.* ¶¶ 62–82 (describing Board law-enforcement case lasting 23 months).

These admissions do not concede an as-applied constitutional violation; nor does the Board agree to as-applied relief.  At most, the Board's statements amount to a promise to enforce the law more responsibly going forward.  That same promise to better self-police also underlies the Board's motion for entry of judgment.  The Board's proposed declaration says nothing about what speech is protected from future enforcement; it speaks only of the constitutionality of past Board actions, not the future effect of the challenged laws.  Proposed J. ¶ 1.  The proposed injunction likewise provides no real security for Mats.  It would "enjoin[] [the Board] from enforcing Oregon's engineering title and practice act . . . against Plaintiff for his speech about traffic lights and his description of himself as an engineer *except in the context of professional or commercial speech.*"  *Id.* ¶ 2 (emphasis added).  Like the Board's answer, that proposed injunction neither identifies particular speech Mats can safely convey nor defines what "commercial" and "professional" speech (or activity in the "context" of that speech) the Board reserves the power to punish.

This is not the as-applied relief Mats seeks in his complaint, and the Board's carve-out for speech in the "context" of "professional or commercial speech" makes its concessions all but worthless. The contours of commercial speech are uncertain. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993) (noting "the difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category"). And to the extent courts have recognized a professional-speech doctrine at all, it "is one of the least developed areas in First Amendment jurisprudence." Note, Erika Schutzman, *We Need Professional Help: Advocating for a Consistent Standard of Review When Regulations of Professional Speech Implicate the First Amendment*, 56 B.C. L. Rev. 2019, 2034 (2015). According to one court, even fortune-telling qualifies as professional speech. *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013). If the Board's proposed judgment were adopted, these uncertainties would leave Mats in the same place he was before—unsure of when, and about what, he could speak.

Equally troubling, the Board uses the terms "commercial" and "professional" to justify punishing clearly protected discourse. In *Topaz v. Oregon Board of Examiners for Engineering and Land Surveying*, 297 P.3d 498 (Or. Ct. App. 2013), for instance, the Board punished a retired engineer because he called himself a "P.E." in a complaint about home water damage. If that reference was protected by the First Amendment at all, the Board maintained, it could still be punished as "commercial speech." Answer Br., *Topaz*, 2011 WL 8270852, at *3–4, *26. In 2015, the Board fined an activist $1,000 for submitting testimony at a public meeting, ruling that his "reports, commentary and testimony" were the acts of a "professional" and thus "clearly not protected speech." *See* Final Order by Default at 16–17, *In the Matter of Dale La Forest*, Case No. 2697 (Aug. 14, 2015) (available at Dkt. No. 25-15). And in 2016, Board minutes reflect that the agency saw no constitutional impediment to enforcing its title law against a professor based

on "a series of research papers" and "public presentations."  *See* Gedge Decl. in Supp. of Prelim. Inj. (Dkt. No. 25-14) ¶ 11 & Ex. 9 (Dkt. No. 25-23), at 16–17; *id.* ¶ 12 & Ex. 10 (Dkt. No. 25-24), at 1–2.  Many of these (and other) enforcement actions are specifically alleged in Mats's complaint.  Compl. ¶¶ 1–2, 57–61.

As the Board sees it, therefore, much of the speech Mats wishes to engage in could well qualify as "professional" or "commercial," or arising in that "context."  In the past, for example, Mats has presented his theories at a traffic-engineering conference, *id.* ¶ 22, and he would like to do so again in the future, *see, e.g.*, *id.* ¶¶ 86, 89.  He wants to be free to "speak[] out about traffic light timing in many public forums, including sharing [his] ideas with policymakers, the academic and scientific communities, the media, and government officials."  Järlström Decl. in Supp. of Prelim. Inj. (Dkt. No. 25-1) ¶ 30; *see also* Compl. ¶¶ 86, 89.  And he wants to "describe [him]self using the word 'engineer' in the biographical information accompanying [his] writings and speech about traffic lights as well as in other professional and personal settings."  Järlström Decl. in Supp. of Prelim. Inj. ¶ 30; Compl. ¶¶ 96–99.  Particularly given the Board's past enforcement, there is every reason to think the Board would view some or all of this speech as arising "in the context of professional or commercial speech," making it fair game under the proposed injunction.

In effect, the Board concedes that Mats can speak freely unless the Board chooses to punish him.  That half-hearted concession does not translate to as-applied relief.  "[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*."  *Stevens*, 559 U.S. at 480.  As a practical matter, however, *noblesse oblige* is all the Board offers.  Unlike the relief pleaded in Mats's complaint, the Board's proposed declaratory relief is strictly retrospective.  And the Board's proposed injunction leaves it free to define the

scope of its own enforcement power going forward.  At the merits stage, the Board is free to

contest Mats's right to complete relief.  But it cannot shortcut the adversarial process by asking

the Court to enter a judgment that "fails to give the plaintiff all the law authorizes and [he] has

sought."  *See Genesis Healthcare Corp.*, 569 U.S. at 85 (Kagan, J., dissenting).  Whatever the

Board may say, its preferred judgment does not amount to "all the relief to which [Mats] is

entitled on his as-applied theory."  Defs.' Mot. at 5.

### B. Even if the Board conceded all the as-applied relief that Mats seeks—and it has not—Mats has the right to seek facial relief as well.

The Board's theory of the case lacks merit for a second, independent reason.  Whatever

the Board's concessions about as-applied relief, Mats has the right to show—and this Court has

the power to decide—that the challenged laws are invalid on their face.  "Nothing prevents th[e]

Court from awarding facial relief as the appropriate remedy for [plaintiffs'] as-applied claims."

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016).  Thus, the availability of

as-applied relief in no way deprives this Court of the power to address the challenged laws'

facial validity.

A law is always facially invalid if "'no set of circumstances exists under which [the law]

would be valid'" or if it "lacks any 'plainly legitimate sweep.'"  *Stevens*, 559 U.S. at 472.  But

when laws regulate speech, they are held to a higher standard.  In the First Amendment context, a

law is facially invalid not only if "no set of circumstances" exists in which it could properly be

applied, but also "if it prohibits a substantial amount of protected speech."  *Williams*, 553 U.S. at

292.  That is because "overbroad" laws have the potential to chill the speech of "others not

before the court," *Jews for Jesus, Inc. v. Port of Portland*, No. 3:04-cv-00695-HU, 2005 WL

1109698, at *13 (D. Or. May 5, 2005), *aff'd*, 172 F. App'x 760 (9th Cir. 2006), and thus work a

continuing First Amendment harm even if they apply constitutionally some of the time.  These

laws are so insidious that the federal courts even relax the usual standing requirements. Normally, a plaintiff whose conduct can legally be punished does not have standing to challenge a law's constitutionality based on how it infringes other people's rights. *New York v. Ferber*, 458 U.S. 747, 767 (1982). In the First Amendment context, however, a litigant can contest an overbroad law "even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Id.* at 769.

The Board pays lip service to these principles (Defs.' Mot. at 5–6), but its argument turns them upside down. In the Board's view, only those people whose First Amendment rights are *not* violated can complain that the Board's laws violate too many people's First Amendment rights. When a plaintiff is entitled to as-applied relief, the Board reasons, "facial validity is not legitimately at issue." *Id.* at 2. By conceding its laws are invalid as applied to Mats, the Board seeks to pick off its most formidable challenger and preserve its power to pursue everyone else.

That is not how First Amendment doctrine works. Overbroad laws are so harmful that they can be challenged *even* by plaintiffs without a First Amendment stake—not *only* by those plaintiffs. "Indeed, any other result would have the ironic effect of granting greater powers of statutory invalidation to those whose activities are unprotected than to those whose activities are protected." *Waters v. Barry*, 711 F. Supp. 1125, 1133–34 (D.D.C. 1989); *see also Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997). And Ninth Circuit precedent bears this out. In *Lind v. Grimmer*, 30 F.3d 1115 (9th Cir. 1994), for example, Hawaii officials made the same argument the Board is making, even relying on the same precedent the Board invokes. Like the Board in this case, the Hawaii officials in *Lind* maintained that courts "may not reach the question of overbreadth because, if the statute is unconstitutional as applied to [the plaintiff], he has no standing to challenge it as overbroad." *Id.* at 1122. Like the Board in this case (*see*

Defs.' Mot. at 6, 11), the Hawaii officials in *Lind* invoked *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985), to argue that a plaintiff entitled to as-applied relief cannot seek a judgment declaring the challenged laws facially overbroad.

The Ninth Circuit rejected that argument.  The court first held the plaintiff's speech "fully protected" and the challenged law unconstitutional "as applied to [him]."  *Lind*, 30 F.3d at 1119, 1122.  The court then turned to facial overbreadth.  Even "after striking the portion of [the law] that is unconstitutional as applied to [the plaintiff], and even assuming that the statute may have some constitutional applications," the court held, "we are left with the fact that [the law] has numerous other potential applications that are unconstitutional."  *Id.* at 1122.  For that reason, "the dangers that the overbreadth doctrine is designed to avert—a potential chilling effect on speech and lack of a proper party before the court—are present," and the plaintiff "has standing to raise the issue."  *Id.*; *see also id.* (reasoning that *Brockett* dealt with the entirely "different" question of how to evaluate a law whose "only unconstitutional application is the one directed at a party before the court").

Consigning *Lind* to a footnote, the Board offers no good reason why that decision does not foreclose its theory.  Defs.' Mot. at 11 n.3.  The Board suggests that the court in *Lind* may have used "overbreadth language" mistakenly and that the court "truly meant" to discuss the more stringent, "no set of circumstances" path to facial invalidation.  *See id.*  Yet the Ninth Circuit could not have been clearer.  The Ninth Circuit addressed at length the very precedent the Board invokes.  The Ninth Circuit rejected the very position the Board advocates.  And the Ninth Circuit made clear that it was invalidating the challenged law as "fatally overbroad."  *Lind*, 30 F.3d at 1123.  The court even acknowledged—repeatedly—that some applications of the law might be valid, which is the hallmark of an overbreadth analysis.  *See id.* at 1122, 1123 (noting

that "the validity of some of [the law's] prohibitions . . . may be arguable" and that "the statute

may have some constitutional applications").

The Board's leading authority does not counsel differently.  The Board notes that in

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)—which

predates *Lind*—the Supreme Court declined to "entertain an overbreadth challenge."  *Id.* at 802;

*see also* Defs.' Mot. at 8–9.  The Supreme Court did so, however, both because the plaintiffs

could not show "that the ordinance applies to any conduct more likely to be protected by the

First Amendment than their own" *and* because the ordinance did not violate the First

Amendment rights of the plaintiffs themselves.  *See* 466 U.S. at 802.  Put differently, *Taxpayers*

*for Vincent* stands for the proposition that a party against whom a law validly applies cannot

claim overbreadth without showing that the law also applies to "conduct more likely to be

protected by the First Amendment than their own."  *See id.*; *see also id.* ("[O]n this record it

appears that if the ordinance may be validly applied to [the plaintiff], it can be validly applied to

most if not all of the signs of parties not before the Court."); *cf. Hill v. Colorado*, 530 U.S. 703,

732 (2000) (citing *Taxpayers for Vincent* for this proposition).  *Taxpayers for Vincent* did not

hold the converse: that an overbreadth challenge is available *only* if the courts first determine

that the speech of the party before them is unprotected.  Yet that is what the Board argues here.

Indeed, if the Board's view were correct, then many First Amendment cases would have

been decided differently.  Instead, courts regularly decide whether statutes are facially overbroad

in addition to—or in place of—holding that the laws are unconstitutional as applied to specific

litigants.  For example:

> ➢  In *Stevens*, 559 U.S. 460, an eight-member majority of the Court held a federal
>
>      statute overbroad without first deciding whether the criminal defendant could

prevail on as-applied grounds.   The Court did so over Justice Alito's objection that "overbreadth invalidation need not and generally should not be administered when the statute under attack is unconstitutional as applied to the challenger before the court." *Id.* at 484 (Alito, J., dissenting); *compare id.* at 473 n.3 (majority opinion), *with id.* at 482 n.1 (Alito, J., dissenting) (discussing whether as-applied challenge was raised in the defendant's briefs).[*]

➢ In *Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987)—decided just three Terms after *Taxpayers for Vincent*—the Court held an airport speech restriction facially overbroad without even considering whether the restriction was unconstitutional as applied to the plaintiffs' specific acts of distributing religious literature.

➢ In *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202 (9th Cir. 2010), the court expressly declined to address the plaintiffs' as-applied challenge because their "overbreadth challenge . . . suffices to dispose of this case," *id.* at 1208; *see also id.* at 1207 n.1 ("Because the statutes are unconstitutionally overbroad, we do not address . . . the challenges to the statutes as applied to particular works.").

➢ In *Nunez*, 114 F.3d 935, the Ninth Circuit held that "[p]laintiffs may seek directly on their own behalf the facial invalidation of overly broad statutes that 'create an unacceptable risk of the suppression of ideas,'" *id.* at 949; *see also id.* at 949–50 (observing that "overbreadth" terminology "is more of a technical academic point

---

[*] The Board suggests in passing that a plaintiff seeking facial relief can do so only by forgoing any argument for as-applied relief.  *See* Defs.' Mot. at 11.  But whether to award facial relief, as-applied relief, or both is a question of remedy decided by the Court, not a question of plaintiffs' (or defendants') concessions.  *Cf. Citizens United v. FEC*, 558 U.S. 310, 331 (2010) ("The parties cannot enter into a stipulation that prevents the Court from considering certain remedies if those remedies are necessary to resolve a claim that has been preserved.").

than a practical concern" and "proceed[ing] to the merits of the First Amendment challenge to the ordinance's overbreadth without determining whether the ordinance's restrictions on expression burden plaintiffs themselves or only other minors").

➢ In *Tucker v. State of California Department of Education*, 97 F.3d 1204 (9th Cir. 1996), the court underscored that "[a] party whose speech may not be constitutionally prohibited may also challenge a statute as overbroad if the speech of others would be chilled," *id.* at 1216 n.10.

➢ In *Yniguez v. Arizonans for Official English*, 69 F.2d 920 (9th Cir. 1995) (en banc), *vacated on other grounds*, 520 U.S. 43 (1997), the court held that "a party may challenge a law as facially overbroad that would be unconstitutional as applied to him so long as it would also chill the speech of absent third parties," *id.* at 931.

➢ In *BSA, Inc. v. King County*, 804 F.2d 1104 (9th Cir. 1986), the court held a ban on nude dancing unconstitutional, then rejected the government's argument that the plaintiffs "cannot assert the interests of absent third parties" and lacked "standing to raise the overbreadth challenge," *id.* at 1109.

➢ Earlier this year, a district court in this Circuit reaffirmed that "[a]lthough a plaintiff generally brings an overbreadth challenge to assert that a law violates the First Amendment rights of parties that are not before the court, a plaintiff may nevertheless assert an overbreadth challenge to a law that the plaintiff contends also violates its own First Amendment rights." *Microsoft Corp. v. U.S. Dep't of*

*Justice*, 233 F. Supp. 3d 887, 910 (W.D. Wash. 2017) (citing *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989)).

As this authority confirms, the Board is simply wrong that the federal courts cannot—or should not—address a law's facial overbreadth when as-applied relief is also available.  Quite the opposite:  "'[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly "as-applied" cases.'"  *See Whole Woman's Health*, 136 S. Ct. at 2307; *see also* Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*, 99 Cal. L. Rev. 915, 946 (2011) ("[T]he [Supreme] Court frequently eschews opportunities to decide cases on narrow, as-applied bases even when such bases are available."); *cf. Fox*, 492 U.S. at 484 ("[W]hile the overbreadth doctrine was born as an expansion of the law of standing, it would produce absurd results to limit its application strictly to that context.").  Even if the Board had conceded all of the as-applied relief that Mats seeks, therefore, this Court has the power to decide whether the challenged laws are facially invalid, and Mats has the right to make his best case for why the Court should exercise that power here.

### C.    The Board's proposed judgment is inconsistent with Rule 65.

The Board's preferred judgment also raises serious procedural concerns. Under Rule 65, "[e]very order granting an injunction . . . must" both "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B)–(C). "The drafting standard . . . is that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."  Charles Alan Wright et al., 11A Fed. Prac. & Proc. Civ. § 2955 (3d ed.).  Thus, "orders simply requiring defendants to 'obey the law' uniformly are found to violate the specificity requirement."  *Id.*

The Board's motion proposes just such an ambiguous injunction, providing that Mats's speech is protected "except in the context of professional or commercial speech."  Proposed J.

¶ 2.  In this way, the Board appears to ask the Court to incorporate the full body of commercial- and professional-speech doctrine into its judgment.  If the Court were to do so, however, no "lay person" (or lawyer) could confidently determine the injunction's scope.  *See Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011); *cf. Elend v. Sun Dome, Inc.*, 370 F. Supp. 2d 1206, 1211 (M.D. Fla. 2005) (observing that Rule 65 would not be met when "[t]he best the plaintiffs could come up with . . . was something along the lines of a prohibition against violating First Amendment rights"), *aff'd*, 471 F.3d 1199 (11th Cir. 2006).  Worse still, the Board's proposed injunction would leave the Board free to punish not just "commercial" and "professional" speech—however defined—but also other speech the Board believes is spoken in the "context" of commercial or professional speech.  This language is hopelessly open-ended, with every resulting ambiguity subject to being resolved against Mats and in favor of the Board.  *See* Wright, *supra*, § 2955 ("[A]ll omissions or ambiguities in the order will be resolved in favor of any person charged with contempt.").  In any First Amendment case—and particularly one against an agency with the Board's enforcement history—such an injunction promises to chill speech, breed confusion, and invite further litigation.

## II.    This case should be decided consistent with the Federal Rules, not based on the defendants' preferences.

The unusual posture of the Board's motion is compounded by its unusual timing.  At this stage of the litigation, the parties' factual and legal positions are defined by their pleadings alone. Yet rather than "accept[ing] all factual allegations in the complaint as true and constru[ing] them in the light most favorable to the non-moving party," *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)—the correct standard for deciding a case at this stage—the Board asks the Court to resolve numerous disputed questions in the light most favorable to the government.

Foremost, the Board suggests that its laws are not facially overbroad because "there is little genuine danger that the statutes will compromise rights of third parties." Defs.' Mot. at 3, 9. But that is a contested question. The complaint alleges, and the Board's answer denies, that the challenged laws "create an unacceptable risk of the suppression of ideas" and are thus invalid on their face. *Compare* Compl. ¶¶ 113, 124, 135, 145, *with* Answer ¶¶ 84, 94, 105, 115. The complaint also identifies a half-dozen Board enforcement actions that involved the challenged laws and appear to have infringed respondents' First Amendment rights. *See* Compl. ¶¶ 1–2, 57–61. And Mats's pending discovery requests seek further information that is uniquely within the Board's possession and that could rebut the Board's assurances that the "strong medicine" of facial invalidation is not needed here. *See* Defs.' Mot. at 11. For example, Mats has requested documentation on several Board enforcement actions that appear to have compromised the respondents' First Amendment rights. *See, e.g.*, Gedge Decl. ¶ 3 & Ex. 1, at 6 (Reqs. for Produc. No. 4–5); *id.* ¶ 4 & Ex. 2, at 4 (Interrog. 5). Mats has also propounded interrogatories asking the Board to explain the circumstances in which speakers are subject to enforcement under the challenged laws. *See, e.g.*, *id.* ¶ 4 & Ex. 2, at 5 (Interrogs. 7, 11). He has even requested information about the "factual basis for the Defendants' denial" of specific allegations in his complaint. *Id.* ¶ 4 & Ex. 2, at 6 (Interrogs. 15–17). At the pleadings stage, the Court should not simply take the Board at its word that the challenged laws are valid and will not be applied unconstitutionally in the future.

The Board's motion also seeks to litigate the facial validity of Oregon's engineering laws, while insisting that the Court shouldn't decide that issue. The complaint asserts that the laws are facially invalid, Compl. ¶¶ 107, 113, 118, 124, 129, 135, 140, 145, and the answer denies these allegations in relevant part, Answer ¶¶ 79, 84, 89, 94, 99, 105, 110, 115. Yet the Board now asks

the Court to decide that the laws "are plainly not 'unconstitutional in every conceivable application'" because "the Board can validly regulate both professional and commercial speech." Defs.' Mot. at 7. That request is premature. Under both the commercial-speech doctrine and the professional-speech doctrine, it is not enough for the government simply to name First Amendment principles in the abstract; under both doctrines, the state bears a concrete burden. Commercial-speech regulations are valid only if the government "demonstrate[s] that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *see also Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 106 (1990) (plurality opinion) (invalidating restriction on commercial speech "[g]iven the complete absence of any evidence of deception in the present case"); Mem. in Supp. of Pl.'s Prelim. Inj. (Dkt. No. 25) at 31 (arguing that Oregon's title law is invalid even as a restriction on commercial speech). Likewise under the professional-speech doctrine, "'the State must show . . . that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.'" *Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 841 (9th Cir. 2016), *cert. pending* No. 16-1140 (U.S. pet. filed Mar. 20, 2017).

The Board seeks to circumvent these burdens entirely. Under any level of First Amendment scrutiny, however, courts "may not simply assume that the [challenged law] will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (plurality opinion) (citation omitted). That is why Mats has sought discovery as to the state interests the Board asserts and their relationship to the challenged laws. *See, e.g.*, Gedge Decl. ¶ 3 & Ex. 1, at 6–7 (Reqs. for Produc. No. 2–3, 12–13); *id.* ¶ 4 & Ex. 2, at 4–6 (Interrogs. 3–4, 6, 13–14). Yet

despite disagreements on the face of the parties' pleadings, *compare* Compl. ¶¶ 109–11, 120–22, 130, 132, 141, 143, *with* Answer ¶¶ 81–82, 91–92, 100, 102, 111, 113, the Board asks the Court to take on faith that its laws are sufficiently tailored to its claimed interests.  That shortcut breaks with both substantive First Amendment law and the Federal Rules.

Moreover, there is no need for the Board to invent new procedures for this case.  The Federal Rules provide several avenues for defendants to seek to resolve cases expeditiously.  Under Rule 12(c), for instance, a defendant who believes a plaintiff's complaint entitles her to no relief at all can move for judgment on the pleadings.  (The Board pointedly avoided that Rule, *see* Dkt. No. 44, doubtless because such a motion would be ungrantable given the complaint's allegations and the answer's denials, *see* pages 16–18, above.)  At the same time, a defendant who concedes total relief can accept a default judgment and thereby avoid litigation entirely.  *See* Fed. R. Civ. P. 55.  And one who thinks the plaintiff should accept only partial relief can reduce exposure to costs by making an offer of judgment.  *See* Fed. R. Civ. P. 68.  Under none of these mechanisms, however, can defendants do what the Board seeks to do here: unilaterally decide that the plaintiff must accept incomplete relief.  *Cf. Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) ("A defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it *admits* is due.").

In sum, the Board's proposal is at odds with the Federal Rules and with the principle that the plaintiff is master of his complaint.  Tellingly, the Board's motion does not point to any rule or legal standard for the Court to apply.  The Court should take a simpler course: Allow Mats to develop the necessary record and to present a dispositive motion explaining why he is entitled to all the relief his complaint pleads.  This course would not prejudice the Board, which would have every opportunity to renew its arguments either in response to Mats's motion for summary

judgment or in its own cross-motion.  It would also streamline the issues for decision.  That is because denying the Board's motion (or holding it in abeyance) would give Mats the chance to make his case and thereby put to rest many of the peculiar questions raised by the posture of the Board's motion.  In short, this case should proceed the way all cases do.  The Board contests Mats's right to complete relief, so Mats should have the opportunity to show the Court why he is entitled to complete relief.

## CONCLUSION

The Board's motion for entry of judgment should be denied or held in abeyance pending the close of discovery and the deadline for filing dispositive motions.

Dated: October 16, 2017.

Respectfully submitted,

 s/ Samuel B. Gedge                                  .

William J. Ohle (OSB 913866)†
Jill S. Gelineau (OSB 852088)
SCHWABE, WILLIAMSON & WYATT PC
PacWest Center
1211 SW Fifth Avenue, Suite 1900
Portland, OR  97204
Phone: (503) 222-9981
Fax:    (503) 796-2900
E-mail:  wohle@schwabe.com
            jgelineau@schwabe.com

Kelly M. Walsh (OSB 993897)
SCHWABE, WILLIAMSON & WYATT PC
700 Washington Street Suite 701
Vancouver, WA  98660
Phone: (360) 694-7551
Fax:    (360) 693-5574
E-mail: kwalsh@schwabe.com

Samuel B. Gedge (VA Bar No. 80387)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA  22203
Phone: (703) 682-9320
Fax:    (703) 682-9321
E-mail: sgedge@ij.org

Wesley Hottot (WA Bar No. 47539)*
INSTITUTE FOR JUSTICE
10500 NE 8th Street, Suite 1760
Bellevue, WA  98004
Phone: (425) 646-9300
Fax:    (425) 990 6500
E-mail: whottot@ij.org

*Attorneys for Plaintiff*

† Designated local counsel
* Admitted *pro hac vice*