ELLEN F. ROSENBLUM
Attorney General
CHRISTINA L. BEATTY-WALTERS  #981634
CARLA A. SCOTT  #054725
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Tina.BeattyWalters@doj.state.or.us
          Carla.A.Scott@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATS JARLSTROM, | Case No.  3:17-cv-00652-SB |
| Plaintiff, | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CHRISTOPHER D. ALDRIDGE, WILLIAM J. BOYD, DAREN L. CONE, SHELLY DUQUETTE, JASON J. KENT, LOGAN T. MILES, RON SINGH, DAVE M. VAN DYKE, SEAN W. ST. CLAIR, AMIN WAHAB, and OSCAR J. ZUNIGA, JR., in their official capacities as members of the Oregon State Board of Examiners for Engineering and Land Surveying, | **Oral Argument Requested** |
| Defendants. | |

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ................................................................................ 1

II.    BACKGROUND OF THE CASE ........................................................................ 3

III.   ARGUMENT ............................................................................................................ 5

      A.     Standards on motions for summary judgment. ...................................................... 5

      B.     Plaintiff lacks standing to challenge statutes not applied to him. ........................... 6

      C.     Plaintiff's facial challenge fails. ............................................................................. 7

              1.     Plaintiff's motion fails to analyze the relevant issues. ................................ 7

              2.     Standards applicable to First Amendment overbreadth claims .................. 7

              3.     States have authority to regulate professions under their police power ...... 8

              4.     States have authority to regulate commercial speech. .............................. 10

              5.     Oregon's statutory construction methodology applies. ............................ 11

              6.     Oregon's engineering practice statutes are valid. .................................... 12

                      a.     Text and context reveal that Oregon's engineering practice statutes regulate nothing more than the profession of engineering ........... 14

                      b.     Other states' engineering practice statutes are similar to Oregon's statutes ..................................................................................... 18

                      c.     The engineering practice statutes survive intermediate and rational review ..................................................................................... 19

              7.     Oregon's engineering title statutes are valid. ........................................... 22

                      a.     Text and context reveal that the challenged title statutes target professional speech or commercial speech by unregistered persons. ..................................................................................... 23

                      b.     The challenged title statutes are valid restrictions of false or misleading commercial speech. .................................................. 27

      D.     Judicial estoppel principles will prevent the Board from taking a contrary position in the future. ............................................................................................... 31

IV.   CONCLUSION ..................................................................................................... 31

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*Accountant's Society of Virginia v. Bowman*, 860 F.2d 602, 605-06 (4th Cir. 1988) ................. 27

*Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1109 (9th Cir. 2004) ................................. 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................ 5

*Brandwein v. California Bd. of Osteopathic Examiners*, 708 F.2d 1466, 1469 (9th Cir. 1983) .. 27

*Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973) ..................................................................... 7

*CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006).......... 6

*Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) ................................................................................................................................. 5

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561–62 (1980)................................................................................................................................... 10

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ............................................................................. 31

*Davis-Toepfer v. O'Brien*, 320 Or. 729, 741 (1995)............................................................. 12, 30

*Express Oil Change, LLC v. Mississippi Bd. of Licensure for Prof'l Engineers & Surveyors*, (Findings of Fact and Conclusions of Law; Case No. 3:16-cv-00414-HTW-LRA, Doc. # 51, p. 34) (S.D. Miss. 2018)............................................................................................................ 29

*Fair Hous. Council of Oregon v. Travelers Home & Marine Ins. Co.*, No. 3:15-CV-00925-SB, 2016 WL 7423414, at *8 (D. Or. Dec. 2, 2016) ................................................................... 6

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995) ....................................... 10, 11, 20

*Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) ....................... 6, 7

*Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) ........................................................... 8

*Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 322 Or. 406, 415 (1995)............... 12

*Gould v. Harkness*, 470 F. Supp. 2d 1357 (S.D. Fla. 2006) ...................................................... 30

*Knight v. Browne*, 2007 WL 1847245, *2-3 (W.D. Wash. 2007) ............................................. 21

*Knight v. Browne*, 2007 WL 2900279 (W.D. Wash. 2007)....................................................... 21

*Locke v. Shore*, 682 F. Supp. 2d 1283, 1288 (N.D. Fla. 2010).................................................. 22

*Lowe v. S.E.C.*, 472 U.S. 181, 231-32 (1985) ............................................................................ 9

*Maceluch v. Wysong,* 680 F.2d 1062, 1068-69 (5th Cir. 1982)............................................ 27, 30

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Maverick Media Group, Inc. v. Hillsborough County*, 528 F.3d 817, 822 (11th Cir. 2008).......... 6

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984).................................................................................................................................. 8

*Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017)...................................... 5

*Nat'l Institute of Family and Life Advocates v. Harris*, 839 F.3d 823, 840 (9th Cir. 2016), *cert. granted sub nom., Nat'l Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 464 (2017) .................................................................................................................................. 10

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) .................................................................. 31

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 464 (1978)....................................................... 28

*Pickup v. Brown*, 740 F.3d 1208, 1227-1231 (9th Cir. 2014)............................................. 9, 10, 19

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973).... 10

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 930 (9th Cir. 2004) ..................... 11

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992) ............ 9

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) ................................ 6

*Redman Industries, Inc. v. Lang*, 326 Or. 32, 35 (1997) .......................................................... 11

*Salem Police Employees Union v. City of Salem*, 308 Or. 383, 389 (1989) ........................... 12, 26

*Scott v. Dept. of Revenue*, 358 Or. 795, 800 (2016) ................................................................. 11

*Smith & Nephew, Inc. v. Arthrex, Inc.*, No. CV 04–00029–MO, 2010 WL 3467454, at *1 (D. Or. Aug. 31, 2010) ....................................................................................................................... 5

*Snell v. Engineered Systems & Designs Inc.*, 669 A.2d 13, 16-19 (Del. 1995)........................... 28

*Southern Pacific Transp. Co v. Dept. of Revenue*, 316 Or. 495, 498 (1993)............................... 11

*State ex rel Huddleston v. Sawyer*, 324 Or. 597, 608 (1997)............................................... 11, 29

*State v. Gaines*, 346 Or. 160, 171-72 (2009) ...................................................................... 11, 25

*Thomas v. Collins*, 323 U.S. 516, 544 (1945)........................................................................... 9

*Topaz v. Oregon Board of Examiners for Engineering and Land Surveying*, 255 Or. App. 138 (2013)..................................................................................................................................... 29

*U.S. v. Bell*, 414 F.3d 474 (3rd Cir. 2005) .............................................................................. 30

*Van Breeman v. Dep't of Prof'l Regulation*, 296 Ill. App. 3d 363, 364-67 (1998) ..................... 28

*Vsetecka v. Safeway Stores, Inc.*, 337 Or. 502, 508 (2004) ...................................................... 11

*Watson v. State of Maryland*, 218 U.S. 173, 176 (1910) ............................................................ 8

Page iii

*Wright v. Washington State Dept. of Health*, 185 Wash. App. 1049 (2015) ................................ 28

**Statutes**

Alaska Stat. § 08.48.341(13)................................................................................................ 18

Ariz. Rev. Stat. Ann. § 32-101(B)(11).............................................................................. 18

Ark. Code Ann. § 17-30-101 ............................................................................................. 18

Ind. Code § 25-31-1-2 (d) ................................................................................................. 19

Iowa Code § 542B.2(9)(a) ................................................................................................. 19

Ky. Rev. Stat. Ann. § 322.010(4) ...................................................................................... 19

Md. Code Ann Bus. Occ. & Prof. § 14-101(j) .................................................................. 19

ORS 174.020(1)(a)............................................................................................................. 11

ORS 670.275...................................................................................................................... 16

ORS 670.304(6) ................................................................................................................. 16

ORS 672.002...................................................................................................................... 24

ORS 672.002(2) ................................................................................................................. 23

ORS 672.005 ................................................................................................................ 23, 24

ORS 672.005(1)(a)............................................................................................................... 7

ORS 672.005(1)(b) .......................................................................... 7, 12, 14, 18, 19, 22

ORS 672.007(1) ............................................................................................. 7, 18, 24, 26

ORS 672.007(1)(a) ...................................................................................................... 7, 24

ORS 672.007(1)(b) ...................................................................................................... 7, 24

ORS 672.007(1)(c) ........................................................................... 7, 13, 23, 24, 26

ORS 672.020...................................................................................................................... 20

ORS 672.020(1) .......................................................................... 13, 15, 19, 22, 23, 26

ORS 672.020(2) ................................................................................................................. 15

ORS 672.045(1) ...................................................................................................... 13, 19, 22

ORS 672.045(2) ............................................................................................................ 23, 27

ORS 672.090...................................................................................................................... 15

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ORS 672.095 (1971) .................................................................................. 15

ORS 672.098(3) ......................................................................................... 16

ORS 672.153 .............................................................................................. 15

ORS 672.162 .............................................................................................. 15

ORS 672.240 .............................................................................................. 16

ORS 672.255(1)(c) ..................................................................................... 16

ORS 672.255(1)(d) ..................................................................................... 16

ORS 672.255(1)(f) ..................................................................................... 16

ORS 672.255(1)(h) ..................................................................................... 16

ORS 672.325 .............................................................................................. 24

Wash. Rev. Code § 18.43.020(5)(a) ......................................................... 18

Wash. Rev. Code § 18.43.020(5)(b) ......................................................... 18

**Other Authorities**

*Webster's Third New Int'l Dictionary* (unabridged ed. 1971) .................................. 14, 15, 25, 26

**Rules**

Fed. R. Civ. P. 25(d) .................................................................................. 1

Fed. R. Civ. P. 56 ................................................................................... 1, 5

OAR 820-010-0730(3) ................................................................................. 7

OAR 820-010-0730(3)(a) ....................................................................... 7, 23

OAR 820-010-0730(3)(b) ............................................................................ 7

OAR 820-010-0730(3)(c) ................................................................... 7, 13, 23

OAR 820-040-0030 .................................................................................... 13

Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*LR 7-1 Certification*

The parties made a good faith effort via telephone conference to resolve the parties' dispute but they were unable to do so.

## MOTION

Pursuant to Fed. R. Civ. P. 56, Christopher D. Aldridge, William J. Boyd, Daren L. Cone, Shelly Duquette, Jason J. Kent, Logan T. Miles, Ron Singh,[1] Dave M. VanDyke, Sean W. St. Clair, Amin Wahab, and Oscar J. Zuniga, Jr., the members of the Oregon Board of Examiners for Engineering and Land Surveying (collectively "Defendants" or "Board") move for (1) entry of judgment in plaintiff's favor on his as-applied claims and for (2) dismissal of the facial constitutional challenges.

Alternatively, pursuant to Fed. R. Civ. P. 56, Defendants move for (1) entry of judgment in plaintiff's favor on his as-applied claims, (2) dismissal of the facial challenge to the provisions of Oregon law that the Board did not apply to plaintiff, and (3) entry of judgment in Defendants' favor on the remaining facial challenges.

This motion is supported by the following memorandum and the Declaration of Christina L. Beatty-Walters.

## MEMORANDUM OF LAW

### I.    Summary of Argument

Defendants have already conceded that plaintiff is entitled to relief on his as-applied challenge.  The only remaining question is whether he is also entitled to facial relief. Defendants' position has not changed that the court should not address the facial claims.[2]

---

[1] Named Defendant Ron Singh is no longer a member of the Board and, as a result, under Fed. R. Civ. P. 25(d), his successor will automatically be substituted for him as a defendant when the successor is appointed.  A successor has not yet been appointed.

[2] Rather than repeat the same arguments already made in Defendants' motion for entry of judgment, Defendants incorporate those arguments into this motion by this reference. Defendants' Motion for Entry of Judgment, ECF No. 43.  Defendants also maintain their previous position that the form of judgment containing as-applied relief that they previously submitted should be the form entered.  Defendants' Proposed Judgment, ECF No. 43-1.  It

Page 1 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        TBW/c4m/8975457-v7

However, *if* this court chooses to address the facial First Amendment challenge, that challenge should be rejected. In resolving plaintiff's facial challenge, the court's task is not to judge the constitutionality of the Board's prior applications of the statute but, instead, to determine whether the Oregon Legislative Assembly exceeded its constitutional authority when it enacted the statute in the first place. Plaintiff ignored that question completely in his motion. Applying the appropriate statutory construction methodology to the challenged laws demonstrates that the statutes and regulations survive First Amendment scrutiny. This is true even though some of the Board's prior applications of the statutes were based on an erroneous prior interpretation.

If the court addresses the facial challenge, some of the statutory and regulatory provisions challenged are provisions the Board did not apply to plaintiff. Because those provisions were never applied, plaintiff lacks standing to challenge them. Those challenges should be dismissed.

The remaining provisions of Oregon law that plaintiff challenges should be upheld. When the applicable statutory construction methodology is correctly applied, it is plain that Oregon's practice statutes target only the professional practice of engineering. Though it was inappropriate under the First Amendment to pursue plaintiff for the activities and speech in which he engaged, it was also inappropriate under Oregon law. Oregon law does not prohibit the discussion of technical topics. It simply prohibits the unlicensed practice of the profession of engineering, which was not conduct in which Mr. Jarlstrom participated. Because the Ninth Circuit has clearly ruled that states have the authority to regulate professional speech, and because regulation of the profession of engineering is the target of the challenged practice statutes, the statutes should be upheld.

The title statutes are also valid. When properly construed, they apply only to someone who is not registered but who misleadingly holds himself or herself out as an Oregon registered engineer. Contrary to plaintiff's argument, Oregon law does not contain a per se prohibition on

---

should be noted, however, that if the court were to rule in plaintiff's favor on any portion of the facial challenge, as-applied relief would not be necessary as to that portion.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the use of the title "engineer."  And voter's pamphlet statements are not properly subject to regulation by the Board under the title statutes.  Nor are residents who wish to share technical observations or conclusions with the public on their own behalf prohibited in any way by the title statutes.  Oregon law, however, is properly interpreted to prohibit unregistered persons from using misleading representations to solicit business as engineers in a branch of engineering recognized by the Board.  This is a permissible regulation of commercial speech under the First Amendment that the state is authorized to promulgate and enforce.

In this case, the Board takes a decisive turn in its interpretation of its governing statutes. This turn is not gratuitous.  It comes with all the guarantees that the law offers.  Taking the positions the Board takes here—and prevailing—will trigger the application of judicial estoppel. The application of judicial estoppel means the Board will be forever bound by the interpretation of the statutes advanced here.

There can be no reasonable dispute that substantial state interests are at stake in this case. Invalidating the statutes challenged in this case would fundamentally change what the Oregon Legislative Assembly sought to achieve.  Because Oregon has authority to regulate the practice of engineering as well as misleading commercial speech, and because that is all the Oregon Legislative Assembly sought to accomplish, the statutes and regulations should be upheld.

## II.    Background of the Case

Plaintiff alleges and Defendants admit the following facts, all of which are consistent with the Board's findings in its Final Order by Default in the Matter of Mats Jarlstrom.  *See* Declaration of Mats Jarlstrom, Ex. 15, ECF No. 73-15 (Final Order by Default).  Plaintiff's claims can be resolved based on these facts alone.

Plaintiff is an Oregon resident who runs an audio-product testing business and who studies traffic-light timing in his spare time.  Complaint, ¶¶ 8, 15, 16; Answer, ¶¶ 7, 9, 10.  As part of his study, plaintiff has analyzed the mathematical issues involved in traffic light timing. Complaint, ¶ 16; Answer, ¶ 10.  Plaintiff developed the view that the accepted mathematical

Page 3 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

formula for calculating the duration of yellow lights is incomplete, and he developed what he represents to be an improved traffic light formula. Complaint, ¶¶ 17, 37; Answer, ¶¶ 11, 26. He presented his views to local and national media outlets, policymakers, the creator of a well-known traffic signal formula, and the Board. Complaint, ¶¶ 18, 20, 23; Answer, ¶¶ 12, 14, 17. He also presented his calculations to the local news media and represented himself to be an engineer. Complaint, ¶¶ 36–37. Answer, ¶¶ 25–26. And he presented his views to the Washington County Sheriff. Complaint, ¶ 40; Answer, ¶ 29. Plaintiff is not a licensed professional engineer in Oregon or any other jurisdiction. Complaint, ¶ 28; Answer, ¶ 22.

The Board opened an investigation into whether Mr. Jarlstrom practiced engineering without a license and unlawfully used the title "engineer." Complaint, ¶ 43; Answer, ¶ 32. Ultimately, the Board issued a Notice of Intent to Assess a Civil Penalty finding that Mr. Jarlstrom violated the engineering practice law as well as the title law and proposing a $500 penalty. Complaint, ¶¶ 71–77; Answer, ¶¶ 49–55. Plaintiff paid the $500 penalty, and the Board subsequently issued a Final Order by Default. Complaint, ¶¶ 79, 81; Answer, ¶¶ 57, 59.

Plaintiff asserts four claims for relief. The first two claims challenge the statutes prohibiting the unlicensed practice of engineering under the First Amendment's Speech Clause (first claim) and Petition Clause (second claim). Complaint, ¶¶ 103–114, 115–125. He alleges in both claims that the statutes are invalid as applied to his speech and "on their face." Complaint, ¶¶ 107, 112–13, 118, 123–24. In the third and fourth claims, plaintiff asserts that Oregon's engineering title statutes violate the First Amendment's Speech Clause (third claim) and Petition Clause (fourth claim), both facially and as applied. Complaint, ¶¶ 129, 133–35, 140, 144–45.

In their Answer, the Defendants admit violating Mr. Jarlstrom's rights, but deny the challenged statutes are facially invalid. Specifically, in response to the first two claims, Defendants admit that the Board's regulation of plaintiff's speech violated his rights under both the Speech and Petition Clauses. Answer, ¶¶ 83, 93. Similarly, Defendants admit in response to

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the third and fourth claims that their interpretation of the engineering title statutes to prohibit plaintiff's use of the term "engineer" to describe himself in the manner alleged in the Complaint violated his rights under the Speech and Petition Clauses. Answer, ¶¶ 103, 114. Defendants deny facial invalidity. Answer, ¶¶ 79, 84, 89, 94, 99, 105, 110, 115.

Following the filing of an Answer, Defendants filed a motion for entry of judgment. In that motion, Defendants sought entry of judgment in plaintiff's favor on the as-applied claims and dismissal of the remainder. The court denied the motion. Thereafter, the parties engaged in document discovery.

Defendants have withdrawn the Final Order by Default and repaid the penalty amount to plaintiff. *See* Declaration of Mats Jarlstrom, Ex. 17, ECF No. 73-17.

## III.    Argument

### A.    Standards on motions for summary judgment.

"Summary judgment is appropriate if—construing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor—there is no genuine dispute of material fact, such that judgment is appropriate as a matter of law." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017); Fed. R. Civ. P. 56. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "When presented with cross-motions for summary judgment, [the court] review[s] each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008); *accord Smith & Nephew, Inc. v. Arthrex, Inc.*, No. CV 04–00029–MO, 2010 WL 3467454, at *1 (D. Or. Aug. 31, 2010). Moreover, if, on summary judgment, the court concludes that a party lacks standing to assert a claim, dismissal of the claim is appropriate. *Cf. Fair Hous. Council of Oregon v. Travelers Home & Marine Ins.*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Co.*, No. 3:15-CV-00925-SB, 2016 WL 7423414, at *8 (D. Or. Dec. 2, 2016), *findings and recommendation adopted by* No. 3:15-CV-925-SI, 2017 WL 90373 (D. Or. Jan. 10, 2017).

**B.    Plaintiff lacks standing to challenge statutes not applied to him.**

To the extent that plaintiff's facial claims challenge provisions under which he was not cited, his claims fail because he lacks standing to challenge those provisions. The "overbreadth doctrine operates as a narrow exception permitting [a] lawsuit to proceed on the basis . . . that [a] statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) (internal quotation marks omitted). However, to raise an overbreadth challenge, a plaintiff must nonetheless establish that he "has suffered an injury in fact and can satisfactorily frame the issues on behalf of . . . non-parties." *Id.* Plaintiff in this case cannot do that with respect to statutory and regulatory provisions about which the Board made no findings. A plaintiff cannot leverage his "injuries under certain, specific provisions to state" a broader injury. *Id.* at 892; *see also CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (rejecting plaintiff's argument that "injury under one provision is sufficient to confer standing on a plaintiff to challenge all provisions of an allegedly unconstitutional ordinance"). The overbreadth doctrine does not waive the requirement that the plaintiff have standing to assert a challenge on his own behalf. *See Maverick Media Group, Inc. v. Hillsborough Count*y, 528 F.3d 817, 822 (11th Cir. 2008) (noting that the "overbreadth doctrine does not . . . grant a plaintiff carte blanche to challenge an entire ordinance merely because some part of the ordinance—to which the plaintiff is not subject—might be unconstitutional"); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) (concluding that plaintiff's standing did "not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions").

Page 6 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
           PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
           TBW/c4m/8975457-v7

                              Department of Justice
                              100 SW Market Street
                              Portland, OR 97201
                              (971) 673-1880 / Fax: (971) 673-5000

Mr. Jarlstrom cannot establish that he was injured by statutory and regulatory provisions that the Board did not apply to him. *See Get Outdoors II, LLC*, 506 F.3d at 892 (noting that plaintiff had "standing to challenge only those provisions that applied to it"). Specifically, plaintiff challenges ORS 672.005(1)(a) and (b) , but the Board only applied ORS 672.005(1)(b). *See* Declaration of Mats Jarlstrom, Ex. 15, p. 7-8, ECF No. 73-15. Thus, he does not have standing to challenge ORS 672.005(1)(a). Plaintiff challenges ORS 672.007(1), but the Board only applied ORS 672.007(1)(c), not ORS 672.007(1)(a) or (b). Declaration of Mats Jarlstrom, Ex. 15, p. 7-8, ECF No. 73-15. He does not, therefore, have standing to challenge ORS 672.007(1)(a) or (b). Plaintiff challenges OAR 820-010-0730(3), but the Board only found he violated OAR 820-010-0730(3)(c), not (a) or (b). Declaration of Mats Jarlstrom, Ex. 15, p. 7-9, ECF No. 73-15. Lacking any injury from those provisions, he therefore lacks standing to challenge OAR 820-010-0730(3)(a) or (b). Plaintiff's challenges to the engineering practice and title statutes must, to this extent and on jurisdictional grounds, be rejected.

      **C.    Plaintiff's facial challenge fails.**

            **1.    Plaintiff's motion fails to analyze the relevant issues.**

Plaintiff's motion does not undertake the analysis that would be necessary if the Court were to address the facial validity of the statutes that were applied to him. Rather, he assumes the statutes are invalid and catalogs the Board's prior interpretation of them as well as its prior applications. He assumes those prior applications were unconstitutional, without analyzing whether, in fact, they were. Rather than responding in kind, the Board's motion presents the issues that court will need to consider if it chooses to address the facial validity of the statutes.

            **2.    Standards applicable to First Amendment overbreadth claims.**

In order to be ruled overbroad, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973). The Court has further explained that a statute will not be ruled overbroad based on some impermissible applications:

Page 7 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
           PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
    TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.  On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court. * * * While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation. * * * In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01

(1984) (internal quotations omitted).  In other words, a few anecdotal examples of a mistaken

application of a statute will not suffice to invalidate a statute.

### 3.    States have authority to regulate professions under their police power.

Plaintiff focuses on First Amendment free speech principles without describing the

authority that states have to regulate those within their borders, even when speech is involved.

But state authority under its police powers is central to the resolution of this case.  Under

established precedent, states have authority to regulate in the areas of professional speech and

commercial speech.

It is well settled that states retain police power to regulate the practice of professions

within their borders.  In 1910, the Supreme Court noted "[i]t is too well settled to require

discussion at this day that the police power of the states extends to regulation of certain trades

and callings, particularly those which closely concern public health."  *Watson v. State of*

*Maryland*, 218 U.S. 173, 176 (1910); *see also Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792

(1975) ("We recognize that the States have a compelling interest in the practice of professions

within their boundaries, and that as part of their power to protect the public health, safety, and

other valid interests they have broad power to establish standards for licensing practitioners and

regulating the practice of professions.").  In *Planned Parenthood of Southeastern*

Page 8 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
                PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        TBW/c4m/8975457-v7

*Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992), the Court recognized that state power to regulate professions extends to speech.  On a First Amendment claim against a state statute that required the dissemination of information to patients, the plurality opinion explained,

> To be sure, the physician's First Amendment rights not to speak are implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State.  We see no constitutional infirmity in the requirement that the physician provide the information mandated by the State here.

*Id.* Two other widely-cited Supreme Court concurrences also support state regulation of speech as part of regulating professions.  *See Thomas v. Collins*, 323 U.S. 516, 544 (1945) (J. Jackson concurrence)  ("A state may forbid one without its license to practice law as a vocation, but I think it could not stop an unlicensed person from making a speech about the rights of man or the rights of labor, or any other kind of right, including recommending that his hearers organize to support his views."); *Lowe v. S.E.C.*, 472 U.S. 181, 231-32 (1985) (J. White, concurrence) (citing Justice Jackson's concurrence in *Thomas* and describing "the point where regulation of professional leaves off and prohibition on speech begin" as "[w]here the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted[.]").

The Ninth Circuit, among other circuits, has recognized the right of states to regulate speech as an incidental part of regulating the practice of professions.  In *Pickup v. Brown*, 740 F.3d 1208, 1227-31 (9th Cir. 2014), the court viewed a professional's activities along a continuum.  At one end, "where a professional is engaged in a public dialogue, First Amendment protection is at its greatest * * * Thus, outside the doctor-patient relationship, doctors are constitutionally equivalent to soapbox orators and pamphleteers, and their speech receives robust protection under the First Amendment."  *Id.* at 1227-28.  This end of the spectrum includes core political speech that is subject to strict scrutiny.  At the "midpoint of the continuum, within the confines of a professional relationship, First Amendment protection of a professional's speech is somewhat diminished."  *Id.* at 1228.  The court emphasized that the professional relationship is

Page 9 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
                PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
          TBW/c4m/8975457-v7

                                Department of Justice
                                100 SW Market Street
                                Portland, OR 97201
                        (971) 673-1880 / Fax: (971) 673-5000

paramount: "the First Amendment tolerates a substantial amount of speech regulation within the professional-client relationship that it would not tolerate outside of it." *Id*. Regulation of such speech is "subject to intermediate scrutiny." *Nat'l Institute of Family and Life Advocates v. Harris*, 839 F.3d 823, 840 (9th Cir. 2016), *cert. granted sub nom., Nat'l Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 464 (2017).

At the opposite end of the continuum is regulation of professional conduct that may have an incidental effect on speech. *Pickup*, 740 F.3d at 1229. Here, the state's power to regulate is "great" despite the incidental impact on speech. *Id*. Regulation of professional conduct is subject to rational basis review. *Id*. at 1231. In *Pickup*, the court ruled that a state law prohibiting mental health providers from providing sexual orientation change efforts therapy to children regulated conduct, not speech. Thus, even though the treatment was "performed through speech alone," the state law was upheld under rational basis review. *Id*. at 1229-32.

### 4. States have authority to regulate commercial speech.

States also have authority to regulate commercial speech within their borders. Commercial speech is "expression related solely to the economic interests of the speaker and its audience" or "speech proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561–62 (1980). States "may freely regulate commercial speech that concerns unlawful activity or is misleading." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24 (1995). Commercial speech is unlawful if it concerns proposed commercial activity that would itself be unlawful and the "restriction on advertising is incidental to a valid limitation on economic activity." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973). If commercial speech neither concerns unlawful activity nor is misleading, it may still be regulated if the state meets a three-part test. *See Central Hudson*, 447 U.S. at 564–71; *see, e.g., Florida Bar*, 515 U.S. at 634 (upholding regulation of direct mail solicitations by attorneys to accident victims). That test requires the government to show that it has a substantial interest, that its "restriction on commercial speech directly and

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

materially advances that interest," and that the statute is "narrowly drawn." *Florida Bar*, 515 U.S. at 624. Thus, content-based restrictions that constitute commercial speech are permissible under the First Amendment.

Both the professional speech and the commercial speech doctrines are important here.

### 5.    Oregon's statutory construction methodology applies.

When a federal court interprets a state statute, the federal court applies the state's statutory interpretation methodology. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 930 (9th Cir. 2004). In interpreting state statutes, Oregon courts attempt to discern the intent of the legislature. ORS 174.020(1)(a). Oregon courts follow a two-step statutory construction methodology. At the first step, the court examines the statutory text and context along with any pertinent legislative history. *State v. Gaines*, 346 Or. 160, 171-72 (2009). If the legislative intent remains unclear, then the court considers relevant canons of statutory construction. *Id.*

Primary weight in statutory construction is given to text and context. *Scott v. Dept. of Revenue*, 358 Or. 795, 800 (2016). Courts presume that statutory terms undefined in statute carry their plain and ordinary meanings. *Gaines*, 346 Or. at 175. However, statutory text should be considered in context, not in isolation. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or. 502, 508 (2004) ("Viewed in isolation, that text provides support for employer's position. Ordinarily, however, text should not be read in isolation but must be considered in context."). Relevant context includes other provisions of the same statute and other related statutes. *Redman Industries, Inc. v. Lang*, 326 Or. 32, 35 (1997); *Southern Pacific Transp. Co v. Dept. of Revenue*, 316 Or. 495, 498 (1993). Context also includes the Oregon Supreme Court's construction of the statutory terms. *Redman Industries, Inc.,* 326 Or. at 35; *see also State ex rel Huddleston v. Sawyer*, 324 Or. 597, 608 (1997) ("When this court interprets a statute, that interpretation becomes a part of the statute as if written therein."); *Davis-Toepfer v. O'Brien*, 320 Or. 729, 741

Page 11 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
TBW/c4m/8975457-v7

(1995).  Historical context can also be relevant.  *See Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto, Inc.*, 322 Or. 406, 415 (1995) (considering historical context of statute).

The Oregon Supreme Court has also applied special rules to the interpretation of statutes governing administrative agencies.  In that event, the court examines the legislative purpose and evaluates inexact terms according to whether they advance that purpose:  "A statute concerning an agency is interpreted in the context of the purposes that the legislature sought to achieve through the specific agency and the statute involved.  Interpretation is specific to that agency and those purposes." *Salem Police Employees Union v. City of Salem*, 308 Or. 383, 389 (1989).  Where legislative history is not instructive, "'the test is general:  whether a particular interpretation or application is consistent with or tends to advance a more generally expressed legislative policy.'"  *Id* (citations omitted).

## 6.    Oregon's engineering practice statutes are valid.

Plaintiff challenges a number of statutes and administrative rules on the ground that they "prohibit Jarlstrom from writing and speaking publicly about his ideas relating to the mathematics behind traffic lights."  Complaint, ¶ 107.  He challenges the same statutes and rules on the ground that they "prohibit Jarlstrom from petitioning about his ideas relating to the mathematics behind traffic lights."  Complaint, ¶ 118.  But the statutes and rules plaintiff challenges do not, when interpreted properly, so restrict Mr. Jarlstrom or any other person who is similarly situated.  That is because the statutes are directed at the professional practice of engineering, which is not the activity in which Mr. Jarlstrom was engaged when he analyzed traffic light timing formulas and then spoke out publicly and privately about his conclusions.

Plaintiff challenges three statutory provisions and two administrative rules related to the unauthorized practice of engineering.  One statutory provision defines the "practice of engineering."  ORS 672.005(1)(b).[3]  The second and third[4] challenged provisions make it

---

[3]  ORS 672.005(1)(b) provides:  "'Practice of engineering' or 'practice of professional engineering' means doing any of the following: * * * (b) Applying special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work

Page 12 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

unlawful to engage in the practice of engineering or to practice or offer to practice engineering without a valid certificate to practice engineering in Oregon.  ORS 672.020(1); ORS 672.045(1).  One challenged administrative rule prohibits persons from "engag[ing] in the practice of engineering" unless registered as an engineer in Oregon.  OAR 820-010-0730(3)(c).  The other challenged rule, OAR 820-040-0030, defines the branch of engineering known as traffic engineering and the subclassifications within that branch.

These statutes and rules are not substantially overbroad because they are directed by text, context, and a proper construction to regulation of the actual practice of engineering.  In other words, the statutes and regulations define the professional work that occurs when an engineer is engaged as a professional to analyze and advise about a specific project.  The statute and regulations were not designed to prevent ordinary citizens, whether engineers or not, from evaluating projects and works and then speaking about those evaluations publicly or privately.  Their purpose is rather to protect ordinary citizens, when hiring an engineer, against the risk of unwittingly hiring an unqualified shyster with inadequate education and training in the field.  The distinction between the professional situation and simple speech is in the existence or absence of a professional engagement.  So construed, these statutes are well within the state's constitutional authority.

---

as consultation, investigation, testimony, evaluation, planning, design and services during construction, manufacture or fabrication for the purpose of ensuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects."

[4] Plaintiff's motion appears to challenge ORS 672.007(1)(c) as an engineering practice statute.  Plaintiff does not discuss the provision, however, in the engineering practice portion of his memorandum.  The likely reason for that is because this statute is an engineering title statute, not a practice statute.  Plaintiff was pursued and cited under ORS 672.007(1)(c) for "purport[ing] to be able to perform engineering services," which is a title violation.  Plaintiff discusses this statutory provision in his title discussion, as do Defendants.

Page 13 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
         PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
         TBW/c4m/8975457-v7

###### a. Text and context reveal that Oregon's engineering practice statutes regulate nothing more than the profession of engineering.

The first task for the court is to address the activities the Oregon statutes in question regulate. Plaintiff challenges both practice and title statutes. Applying Oregon's rules of statutory construction to the challenged engineering practice statutes, the result is clear. The text and context of the statutory definition of "practice of engineering" in ORS 672.005(1)(b) shows it is limited to the professional practice of engineering. Plaintiff claims that the definition is so broad that it "requires a license for anyone who expresses a technical opinion, in Oregon, about virtually any creation of humankind." Plaintiff's Motion, ECF No. 72, p. 26. He is wrong. It is only the professional practice of engineering without a license that is contrary to Oregon law.

The statutory text alone is more limited than plaintiff suggests. In order to be considered the "practice of engineering" under ORS 672.005(1)(b), the work performed must be considered either "professional service" or "creative work." The phrase "professional service" does not include the evaluation of a passerby to a construction site or the personal study of traffic light timing. The plain and ordinary meaning of professional service is the engagement of a person to perform work that a person practicing a particular profession would perform. "Professional" is defined as

> **1 a (1) :** of, relating to, or characteristic of a profession or calling (a –degree) **(2) :** concerned or occupied with the training of professionals . . . **b (1) :** engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency **(2) :** characterized by or conforming to the technical or ethical standards of a profession or an occupation:  manifesting fine artistry or workmanship based on sound knowledge and conscientiousness:  reflecting the results of education, training, and experience [.]

*Webster's Third New Int'l Dictionary* 1811 (unabridged ed. 1971).  "Service" is defined as

> **1 :** the condition or occupation of a servant : the serving of a master as **a :** the position of a domestic servant . . . **b :** the domestic employment of a particular master . . . **2 :** the performance of work commanded or paid for by another : a servant's duty : attendance on a superior . . . **5 a :** an act done for the benefit or at the command of another[.]

Page 14 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Webster's Third New Int'l Dictionary* 2075 (unabridged ed. 1971) . The only applicable definitions demonstrate that professional service includes only work that is the type of work that a person practicing the profession of engineering would do for another person who has requested it.

In addition, the plain meaning of the phrase "creative work" also suggests the performance of labor that is part of a livelihood and not a hobby. "Creative" means "**1 :** having the power or quality of creating: given to creation **2 :** PRODUCTIVE—used with *of* . . . **3 :** having the quality of something created rather than imitated or assembled: expressive of the maker: imaginative[.]" *Webster's Third New Int'l Dictionary* 532 (unabridged ed. 1971) . The plain meaning of the term "work" includes not just "activity in which one exerts strength or faculties to do or perform" and "sustained physical or mental effort valued as it overcomes obstacles and achieves an objective or result" but also "the labor, task, or duty that affords one his accustomed means of livelihood" and "strenuous activity marked by the presence of difficulty and exertion and absence of pleasure." *Webster's Third New Int'l Dictionary* 2634 (unabridged ed. 1993) . Thus the phrase "creative work" in the context of the statute also suggests work done for hire.

In the context of the surrounding statutes and other related statutes, it is plain that the phrase "practice of engineering" and the engineering practice statute generally were designed and intended to govern only the practice of the profession of engineering. Statutes require not just registration of professional engineers, but also that registrants obtain and use a seal indicating registration on "every final document." ORS 672.020(1), (2). Statutes require the Board to issue certificates to registrants and allow the Board to administer examinations. ORS 672.090. Statutes authorize the Board to recognize branches of engineering. ORS 672.153; ORS 672.162; *see also* ORS 672.095 (1971) ("The board shall specify on the certificate to practice, when issued to the applicant, the branch or branches of engineering in which the applicant is especially qualified."). Statutes also create the Board and specify that at least 6 of 11

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

members must be registered professional engineers. ORS 672.240. And statutes give the Board

authority to establish by rule: (1) "standards of professional conduct for professional engineers;"

(2) "standards and . . . qualifications for examination, registration, and renewal;" and (3) "the

scope of practice for individuals holding a certificate issued by the board." ORS 672.255(1)(c),

(f), (h). These statutes are clearly designed to regulate a profession, not to outlaw the incidental

use of science in everyday life or the personal study of some topic in applied physical science or

mathematics.

The placement of the statutes at issue in the Oregon Revised Statutes in the context of

other professional regulations is also indicative of legislative intent. The statute at issue is

located within Volume 15 of the Oregon Revised Statutes, which concerns "occupations and

professions." Other occupations in Volume 15 include architecture, accounting, nursing,

dentistry, optometry, physical therapy, and pharmacy, among many others. Further,

ORS Chapter 670 is entitled "occupations and professions generally," and it expressly references

"professional licensing and advisory boards" including, by name, the Board. ORS 670.304(6).

The legislature explained that the professional licensing and advisory boards are "charged with

responsibility for protecting the public through the licensing and regulating of certain professions

practiced in this state." ORS 670.275. Text and context could not be more plain: the

engineering practice statute was designed to regulate the practice of the profession of

engineering.

In fact, the phrase "practice of engineering" is even more limited by statutory context

than suggested above. That is because the Board is charged with recognizing the branches of

engineering on which examinations are given and, therefore, the branches on which registration

is required. *See* ORS 672.255(1)(d); ORS 672.098(3). In branches of engineering not

recognized by the Board, such as software engineering, practicing in that branch is not prohibited

without registration because registration is not possible. Unrecognized branches do not require

licensure to practice.

Page 16 - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
         PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Legislative history is consistent with this interpretation of the engineering practice statute. Legislative history from the adoption of the current definition of "practice of engineering" indicates nothing more than that the legislature was focused on the professional practice of engineering. Nothing indicates that the legislature intended to regulate incidental use of math and science in everyday life or the study of math and science as part of a personal passion or pastime. The definition was not intended to sweep that broadly.

The current definition primarily derives from Senate Bill 276 from the 1973 Oregon legislative session. Declaration of Christina Beatty-Walters ("Beatty-Walters Dec."), Ex. 7. The House committee that considered SB 276 addressed this very issue. In a hearing of the House Consumer and Business Affairs Committee, a proponent of the bill fielded several questions about the breadth of the definition. Though the tape quality is not perfect, it appears a legislator asked about whether it would be considered practicing engineering under the proposed definition for an employee of the parks department to preliminarily site a public restroom by calculating where in the park it could be located. The proponent of the bill responded by referring to the Washington's experience under their similar definition where "that just hasn't occurred." He explained "that's not—not the intent." Beatty-Walters Dec., Ex. 2, p. 11. A question was also raised about whether hiring an engineer would be required to "build your own private house?" In response, the proponent explained that "an engineer is not required under those circumstances. I know what you are getting at (indiscernible). I think you are reading something into it that really isn't there." Beatty-Walters Dec., Ex. 2, p. 14.

Other pieces of legislative history are consistent, including written testimony and exhibits submitted as well as the minutes from the Senate committee that considered the bill. Beatty-Walters Dec., Exs. 1; 3, p. 2;  4; 5, p. 1; 6, p. 2,   There is simply no indication from legislative history that the broader definition of "practice of engineering" was proposed (or enacted) in order to regulate activities that are not considered the professional practice of engineering. Rather, history reveals that the definition was proposed to allow the Board to recognize new

Page 17 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

branches of engineering as they come into existence given new technologies that are constantly

being developed.  There was no intent to require engineering registration for the engineering that

"everybody practices" in everyday life.  The intent was in fact the opposite.[5]  Beatty-Walters

Dec., Ex. 2, p. 17.

### b.  Other states' engineering practice statutes are similar to Oregon's statutes.

Plaintiff claims that Oregon's engineering practice statute is "unusual" among states.

Plaintiff's Motion, ECF No. 72, p. 11.  Plaintiff is wrong.  Oregon's definition of the "practice of

engineering" was expressly modeled after—and is nearly identical to—Washington's statute.

*See* Beatty-Walters Dec*.,* Ex. 3, pp. 2, 6; Wash. Rev. Code § 18.43.020(5)(a).[6]  Nor are Oregon

and Washington alone.  Many other states' statutes contain similar provisions.  *See, e.g.,* Alaska

Stat. § 08.48.341(13)[7]; Ariz. Rev. Stat. Ann. § 32-101(B)(11)[8]; Ark. Code Ann. § 17-30-101[9];

[5] The regulations plaintiff challenges are exactly as narrow in scope—for the exact same reasons and based on the same analysis—as the statutes described above.  Moreover, in the event the court concludes that plaintiff has standing to challenge ORS 672.005(1)(a), that statute should be upheld for the same reasons ORS 672.005(1)(b) should be upheld.

[6] Wash. Rev. Code § 18.43.020(5)(a) provides: "'Practice of engineering' means any professional service or creative work requiring engineering, education, training, and experience and the application of special knowledge of the mathematical, physical, and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, planning, design, and supervision or construction for the purpose of assuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects."  This is very similar to ORS 672.005(1)(b). Washington's statutes also contain an analog to engineering title statute ORS 672.007(1).  *See* Wash. Rev. Code § 18.43.020(5)(b).

[7] Alaska's statute states:  "'practice of engineering' means professional service or creative work, the adequate performance of which requires the specialized knowledge of applied mathematics and sciences, dealing with the design of structures, machines, equipment, utilities systems, materials, processes, works, or projects, public or private[.]"

[8] Arizona's statute states:  "'Engineering practice' means any professional service or creative work requiring engineering education, training and experience and the application of special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, research investigation, evaluation, planning, surveying . . . , design, location, development, and review of construction for conformance with contract documents and design, in connection with any public or private utility, structure, building, machine, equipment, process, work or project."

[9] The Arkansas statute provides:  "'Practice of engineering' means a service or creative work, the adequate performance of which requires engineering education, training, and experience in the

Page 18 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Ind. Code § 25-31-1-2 (d)[10]; Iowa Code § 542B.2(9)(a);  Ky. Rev. Stat. Ann. § 322.010(4); Md.

Code Ann Bus. Occ. & Prof. § 14-101(j).  Oregon's statute is much like the statutes of other

states because the statutes are based on a model law developed by the national association that

develops and administers engineering testing nationwide.  *See* Beatty-Walters Dec., Ex. 3.  If the

court rules in this case that Oregon's practice statute is overbroad, then that ruling raises a

significant constitutional issue in many other states as well.

### c.  The engineering practice statutes survive intermediate and rational review.

Because the engineering practice statute is properly construed to regulate *only* the

practice of the profession of engineering under ORS 672.005(1)(b), the prohibition on practicing

engineering without a license under ORS 672.020(1) and ORS 672.045(1) is not subject to strict

scrutiny under the First Amendment.  Under Ninth Circuit caselaw, the statutes are either

(1) subject to rational basis review because they regulate primarily conduct with only an

incidental impact on speech; or (2) subject to intermediate scrutiny as a professional regulation

of speech.  *See Pickup*, 740 F.3d at 1229-31; *Nat'l Institute of Family and Life Advocates*, 839

F.3d at 840.  Either way, the restriction on practice by unlicensed individuals should be upheld.

Rational basis review requires only a "rational relationship to a legitimate state interest."

*Pickup*, 740 F.3d at 1231.  Intermediate scrutiny requires the state to show "that the statute

---

application of special knowledge in the mathematical, physical and engineering sciences to services or creative work such as consultation, investigation, evaluation, planning, and design of engineering works and systems relating to the use of air, land, water, municipal and regional planning. . ., concerning any utilities, structures, buildings, machines, equipment, processes, work systems, or projects."

[10] Indiana's statute provides:  "'Practice of engineering' means any service or creative work that the adequate performance of requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to services or creative work that includes the following:  (1) Consultation. (2) Investigation. (3) Evaluation. (4) Planning, including planning the use of land and water. (5) The design of or the supervision of the design of engineering works and systems. (6) Engineering surveys and studies. . . (7) Evaluation of construction for the purpose of assuring compliance with specifications, plans, and designs, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, work systems, or projects."

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Nat'l Inst. of Family & Life Advocates*, 839 F.3d at 841 (internal quotations omitted). A perfect fit is not required, nor is it required that the state employ the least restrictive means to advance the state interests. Rather, the fit must only be a "reasonable" one whose "scope is in proportion to the interests served." *Id*. The means need not be the least restrictive means but only "narrowly tailored to achieve the desired objective." *Id*.

Oregon's engineering practice statutes easily pass either test. The legislature enacted these statutes "[i]n order to safeguard life, health and property[.]" ORS 672.020. As the Supreme Court and Ninth Circuit have long recognized, "[s]tates have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for . . . regulating the practice of professions." *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1109 (9th Cir. 2004) (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995). There can be no doubt about the state's compelling interest in protecting the life, health, and property of Oregon's residents by ensuring that those practicing engineering have sufficient education and experience to practice. Oregonians are protected by these statutes daily when they enter high-rise buildings and stadiums designed by structural engineers, drive on interstates and bridges designed by civil engineers, live and work next to modular nuclear reactors designed by nuclear engineers, undergo surgery in operating rooms with electrical and lighting systems designed by electrical engineers, fly in airplanes designed by aeronautical engineers, and flush water into wastewater disposal systems designed by environmental engineers.

Oregon's practice statute is narrowly drawn to protect Oregon's substantial interests. Because the "practice of engineering" definition is properly construed to regulate only the professional practice of engineering, it does not reach further than necessary to protect Oregon's interests.

Page 20 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
             PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
         TBW/c4m/8975457-v7

Upholding Oregon's practice statute is consistent with case law from other states. A federal court upheld Washington's very similar engineering practice statute in a First Amendment overbreadth challenge.  In *Knight v. Browne*, 2007 WL 1847245, *2-3 (W.D. Wash. 2007), the plaintiff was retained by neighbors to evaluate engineering proposals for a proposed housing development and to propose improvements.  The plaintiff did the evaluation, concluded that the engineering proposal contained dangerous engineering defects, and proposed alternatives to remedy those alleged defects.[11]  *Id.* at *1. Because the plaintiff was unlicensed, the engineering board in Washington opened an investigation into the matter, and plaintiff responded by filing suit.  The court rejected the as-applied challenge, concluding that the plaintiff did engage in the unauthorized practice of engineering.  On the facial challenge, the plaintiff argued that the statute was overbroad and "could silence all debate on scientific and technological topics," just as Mr. Jarlstrom argues here.  *Id.* at *2.  The court rejected the overbreadth claim, concluding that "[t]he statute merely prohibits the unauthorized *practice* of engineering, not the unauthorized *discussion* of engineering."  *Id.* at *3.  It rejected the challenge in light of the statute's "limited focus on unauthorized practice."  *Id.*  Ultimately, based on this reasoning, the court granted the defendants' motion to dismiss.  *Knight v. Browne*, 2007 WL 2900279 (W.D. Wash. 2007).  Washington's statute is nearly identical to Oregon's statute; Oregon's statute was, as noted, modeled after Washington's statute.  *Knight* is directly on point.  The court should reject Mr. Jarlstrom's facial challenge just as the *Knight* court rejected Mr. Knight's facial challenge.

---

[11] The facts in *Knight* are similar to the facts in two of the Board's prior investigations about which plaintiff objects:  the cases concerning the Stop the Dump Coalition and Mr. LaForest.  In both situations, as in *Knight*, an unlicensed person was engaged to perform engineering work on behalf of others who requested that the work be performed.  *See* Declaration of Samuel B. Gedge, Ex. 5, p. 2 (Board's law enforcement summary quoting respondent Advanced Earth Sciences, Inc.'s letter, stating that "'Advanced Earth Sciences, Inc., a California corporation, was engaged by Stop the Dump Coalition as an expert consultant to provide a second opinion review of the geotechnical reports for the proposed expansion of the Riverbend landfill. . .'"); Declaration of Dale La Forest, Ex. 1, p. 2, ECF No. 75-1 (Board's Final Order by Default In the Matter of Dale La Forest, stating, "On or about October 1, 2010, La Forest prepared for a client a report titled, Noise Impacts of Biomass Power Plant. . .").

Page 21 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
        PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Similarly, though involving a different profession, a district court in Florida upheld a statute that prohibited practicing nonresidential interior design without a license.  In *Locke v. Shore*, 682 F. Supp. 2d 1283, 1288 (N.D. Fla. 2010), the court limited its construction of the statute's definition of "interior design."  The plaintiff argued that the definition of interior design was so broad in scope that it was "absurd" and presented examples to demonstrate the alleged broad reach.  *Id*.  But the court concluded that the statute did not reach so broadly and was limited to practicing interior design by "provid[ing] services to a design client, with or without compensation."  *Id*.  Given that interpretation, the court concluded that the interior-design practice statute was a professional regulation and "not subject to First Amendment scrutiny."  *Id.* at 1290-92.  As in *Locke*, it is clear here based on text and context that the engineering practice statute targets the practice of the profession of engineering and nothing more.

Oregon's engineering practice statute is properly construed to regulate only the practice of the profession of engineering.  As noted, states have ample authority to regulate the practice of professions within their borders.  And because Oregon's engineering practice statute is targeted only at the professional practice of engineering, Mr. Jarlstrom's activities never fell within the statute.  His personal study, analysis, and speech about his conclusions do not constitute the practice of the profession of engineering and never did.  So, although the Board's pursuit of his activities was admittedly not consistent with the First Amendment, neither was that pursuit permitted under Oregon's engineering practice statutes.  For these reasons, the provisions of the engineering practice statute that were applied to Mr. Jarlstrom—ORS 672.005(1)(b); ORS 672.020(1); and ORS 672.045(1)—should be upheld as consistent with the First Amendment to the United States Constitution, as should the challenged regulations.

### 7.    Oregon's engineering title statutes are valid.

Plaintiff argues that the engineering title statues are also overbroad.  He argues that the title statutes he challenges "restrict[] all manner of public discourse that the government has no

Page 22 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
           PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
       TBW/c4m/8975457-v7

                              Department of Justice
                              100 SW Market Street
                              Portland, OR 97201
                         (971) 673-1880 / Fax: (971) 673-5000

power to regulate." Plaintiff's Motion, ECF No. 72, p. 33.  He also argues that the title statutes are a "content-based speech ban that fail[] strict scrutiny." Plaintiff's Motion, ECF No. 72, p. 33. But he is wrong on both counts.  When properly construed, the challenged statutes and regulation target only professional speech that, as described above, the state has authority to regulate or commercial speech that the state also has authority to regulate.   Because this is the proper target of the statute and regulation, Mr. Jarlstrom's activities were not properly considered to be within the scope of the statute to begin with.  Though pursuit of his activities was not appropriate under the First Amendment, it was also not appropriate under the statutory scheme.  Because the title statutes challenged are appropriate under the First Amendment and are not subject to strict scrutiny, they should be upheld.

Plaintiff challenges four title statutes and one regulation.  The title provisions he challenges are ORS 672.002(2), which defines "engineer," and ORS 672.007(1)(c), which provides that a person offers to practice or practices engineering if he or she "[p]urports to be able to perform. . . any service or work that is defined by ORS 672.005 as the practice of engineering."  He also challenges ORS 672.020(1) and ORS 672.045(2), which make it unlawful to offer to practice or practice engineering if not registered and to falsely represent authority to practice if unregistered.  In addition, plaintiff challenges OAR 820-010-0730(3)(a) and (c), which are similar to the statutes in that they make it unlawful to hold oneself out as authorized to practice and to practice engineering without a license.  Because these statutes legitimately target individuals who hold themselves out as authorized to practice and could hoodwink third parties into relying upon these representations, they are legitimate regulations of commercial and professional speech.

### a.  Text and context reveal that the challenged title statutes target professional speech or commercial speech by unregistered persons.

Plaintiff's argument that the title statutes are overbroad misunderstands the statute in at least two ways.  First, plaintiff challenges the definition of "engineer."  He argues that the state

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

has taken the word "engineer" and "decreed that the word can mean only *one* thing . . . and it punishes whoever deviates from that idiosyncratic definition."  Plaintiff's Motion, ECF No. 72, p. 33.  But Oregon statutes do not categorically prohibit the use of the term "engineer" by nonregistered individuals.  Rather, the statutory definition of "engineer" only applies to the use of the term "engineer" *within the statute*.

The statute provides,  "As used in ORS 672.002 through ORS 672.325, unless the context requires otherwise, . . . (2) 'Engineer,' 'professional engineer' or 'registered professional engineer' means an individual who is registered in this state and holds a valid certificate to practice engineering in this state as provided under ORS 672.002 to 672.325."  In other words, where the engineering title and practice statutes reference "engineer," "professional engineer," or "licensed professional engineer," they reference the statutory definition for those terms.  That is as far as the definition reaches.  Nowhere does the title statute prohibit a person from truthfully using the term "engineer" to describe herself or himself.[12]  That is not how statutory definitions work, in any context.  Nor could the title possibly reach that far, given that some branches of engineering, such as software engineering, do not require any licensure in Oregon.

Plaintiff's challenge rests on a second misunderstanding as well. ORS 672.007(1)(c) is not as broad as plaintiff suggests.[13]  ORS 672.007(1) states, in part, "A person is practicing or offering to practice engineering if the person:. . . (c) Purports to be able to perform, or who does perform, any service or work that is defined by ORS 672.005 as the practice of engineering."

---

[12] Whether plaintiff could qualify to be an Oregon registered professional engineer is not relevant to his right to call himself an engineer in the activities and speech for which he was pursued by the Board.  In any case, it is not clear whether or not plaintiff would be able to qualify for registration as an engineer under Oregon law because it is not clear that his educational background meets the requirements.

[13] Plaintiff also purports to challenge ORS 672.007(1)(a) and (b), but he lacks standing to challenge those provisions, as described above.  To the extent the court concludes plaintiff does not lack standing to challenge those subsections, those sections should be upheld for all the reasons that ORS 672.007(1)(c) should be upheld.  Namely, text and context demonstrate that the statute is limited to only those acts and statements that constitute an offer to practice a branch of engineering recognized by the board by someone who is not licensed to do so.  Such regulations are constitutionally permissible because they are regulations of misleading commercial speech.

Page 24 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
            PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
            TBW/c4m/8975457-v7

Plaintiff objects to the phrase "purports to be able to perform."  He argues that it is overbroad because the use of the term "engineer" in any context constitutes purporting to be able to practice engineering.  But that statutory interpretation is not consistent with text and context.  Applying the Oregon Supreme Court's statutory construction methodology reveals that this provision of the title law is more narrowly targeted to reach those who hold themselves out as persons who are qualified to practice professional engineering in Oregon when they, in fact, are not.

The term "purports" is not defined, so the plain and ordinary meaning of the term can be determined by consulting the dictionary.  *Gaines*, 346 Or. 160, 171-72 (2009).  Webster's defines "purport" as "**1 :** to convey, imply, or profess outwardly (as meaning, intention, or true character) : have the often specious appearance of being, intending, claiming, (something implied or inferred) : IMPART PROFESS[.]"  *Webster's Third New Int'l Dictionary* 1847 (unabridged ed. 1971) .  Accordingly, "purports" means to profess or claim.

The next question is what it means to be "able to perform."  Able is not defined in the statute.  Webster's lists many definitions, the first several being:

> **1 a :** possessed of needed powers (as intelligence or strength) or of needed resources (as means or influence) to accomplish an objective (--to solve a problem) (--to buy a house) **b :** designed, constructed, or naturally endowed with the power to perform a task or achieve an end (machines—to lift 10 tons) (owls—to see in the dark) **c :** having freedom from restriction or obligation or from conditions preventing an action (American women are –to vote) (we were—to meet her at noon).

*Webster's Third New Int'l Dictionary* 4 (unabridged ed. 1971) .

The definition does not particularly help clarify the meaning because "able" could mean possessed of intellectual power, meaning the sheer intellectual capability to perform the functions.  Or it could as easily mean possessed of the necessary resources (the legal right to perform the tasks) and free from any legal restriction on performing the tasks.  In other words, the text could legitimately apply only when someone is professing to have the technical and legal ability and right to practice engineering in Oregon.

Page 25 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
                PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Context suggests that the latter meaning applies here. The first two parts of ORS 672.007(1) apply, for example, when a person uses a title that suggests licensure. It is consistent to read the third part of that statute to apply only when a person makes some other representation that he or she is registered, other than by using a suggestive title.

This reading would also be consistent with the use of the term "offering" in ORS 672.007(1). A person is "offering to practice engineering" in ORS 672.007(1)(c) when he or she "purports to be able to perform" a service that constitutes the practice of engineering. "Offer" is not defined in the statute, but the dictionary definition is instructive. Webster's defines "offer" to include

> **1 a :** to present as an act of worship or devotion: SACRIFICE . . .
> **b :** to utter (as a prayer) in devotion. . . **2 a:** to present for
> acceptance or rejection :  hold out : TENDER; PROFFER. . . **b:** to
> present in order to meet a requirement. . . **3 a :** to bring or put
> forward for action or consideration :  PROPOSE, SUGGEST. . . **b**
> **:** to declare one's readiness or willingness—used with an infinitive
> object[.]

*Webster's Third New Int'l Dictionary* 1566 (unabridged ed. 1971). The pertinent definitions are "to present for acceptance or rejection:  hold out," "to bring or put forward for action or consideration," and "to declare one's readiness or willingness."

From the text and context, then, the meaning of ORS 672.007(1)(c) emerges. That provision was intended to prevent persons from making statements in which the person directly professes to be entitled under Oregon law to practice engineering within the meaning of the statute. And ORS 672.020(1) makes that act unlawful if the person is not, in fact, registered under Oregon law. In addition, the use of the term "offering" in both ORS 672.020(1) and ORS 672.007(1) suggests an even narrower reading:  that the statute is limited to persons who falsely present themselves as registered engineers and thereby potentially jeopardize "life, health, and property." Reading the challenged title provision this way by giving meaning to the term "offering" advances the purpose of the statute, which is consistent with the Oregon Supreme Court's statutory construction methodology. *See Salem Police Employees Union*, 308 Or. at 389.

Page 26 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
         PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
         TBW/c4m/8975457-v7

                              Department of Justice
                              100 SW Market Street
                              Portland, OR 97201
                              (971) 673-1880 / Fax: (971) 673-5000

Similarly, ORS 672.045(2), which plaintiff also challenges, makes it unlawful to falsely represent one's authorization to practice engineering in Oregon.  Nothing about these statute conflicts with the First Amendment.

The provisions of the engineering title law that plaintiff challenges either target professional speech, which is valid as described above, or target false or misleading commercial speech that the state has the right and authority to regulate.  The statutes challenged here prohibit persons who are not registered engineers from soliciting engineering business that only registered engineers are qualified in Oregon to perform, and from holding themselves out in advertising or other relevant commercial communications as registered engineers.  Those are both examples of commercial speech that government has leeway to regulate.

### b. The challenged title statutes are valid restrictions of false or misleading commercial speech.

Courts have upheld statutory restrictions on the use of misleading professional titles, and the engineering title statutes challenged here are no different.  In *Accountant's Society of Virginia v. Bowman*, 860 F.2d 602, 605-06 (4th Cir. 1988), the court upheld Virginia's statute prohibiting non-CPAs from "'describ[ing themselves] or assum[ing]' any of several 'titles or designations,' including 'certified public accountant, CPA, public accountant, PA, certified accountant, CA, chartered accountant[,]'" among others.  The court considered the use of these titles to constitute "business or trade labels, analogous to advertising" and, thereby, commercial speech.  *Id*. at 605.  The court upheld the statute because the statute only restricted the use of inherently misleading titles, which are not protected by the First Amendment.  *Id*. at 605-06.

Similarly, the Ninth Circuit in *Brandwein v. California Bd. of Osteopathic Examiners*, 708 F.2d 1466, 1469 (9th Cir. 1983), upheld California's restriction on osteopathic physicians holding themselves out as M.D.s.  The court considered the use of M.D. to describe a physician who did not earn an M.D. to be false or misleading commercial speech that the state can properly regulate.  *Id*; *see also Maceluch v. Wysong,* 680 F.2d 1062, 1068-69 (5th Cir. 1982) (upholding

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Texas statute prohibiting osteopathic physicians from representing themselves as M.D.s)*;*

*Wright v. Washington State Dept. of Health*, 185 Wash. App. 1049 (2015) ("A license to practice

is a representation to the public concerning the particular qualifications of the holder, one which

the public may rely on in selecting a physician.").

Other courts have upheld state engineering title statutes specifically, and those cases are

instructive.  In *Van Breeman v. Dep't of Prof'l Regulation*, 296 Ill. App. 3d 363, 364-67 (1998),

the plaintiff submitted a brochure, letter, and resume to the engineering board that promoted his

services as an expert witness.  The court found that, despite "truthfully stat[ing] his education,

qualifications, and job titles," the plaintiff "clearly holds himself out as able to perform many

services recognized as professional engineering practices, especially forensic engineering."

*Id*. at 365-66.  The court determined the materials were inherently misleading commercial speech

because "[a]nyone reading plaintiff's literature would be misled to believe that plaintiff was a

licensed professional engineer."  *Id*. at 367.  The court, therefore, rejected the First Amendment

challenge.  *Id*. at 369.  This is exactly the type of speech that the title statutes challenged here

target.  *See also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 464 (1978) (noting that the

"Rules prohibiting solicitation [by lawyers] are prophylactic measures whose objective is the

prevention of harm before it occurs.").

And in *Snell v. Engineered Systems & Designs Inc.*, 669 A.2d 13, 16-19 (Del. 1995), the

court rejected a facial First Amendment challenge to Delaware's engineering title statute.  That

statute prohibited unlicensed persons from using "'any name, title, description or designation,

either orally or in writing, that will lead to the belief that such person is entitled to practice

engineering as defined in this chapter, including without limitation the words "engineer" or

"engineering" or any modification or derivative of those words.'"  *Id.* at 16-17 (emphasis

omitted).  That statute was upheld as an appropriate commercial speech regulation because, like

the provisions challenged here, Delaware's statute is clearly aimed to prevent people from being

misled by engaging professionals who misleadingly hold themselves out as authorized to practice

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

engineering. *See also Express Oil Change, LLC v. Mississippi Bd. of Licensure for Prof'l Engineers & Surveyors*, (Findings of Fact and Conclusions of Law; Case No. 3:16-cv-00414-HTW-LRA, Doc. # 51, p. 34) (S.D. Miss. 2018) (granting board's motion for summary judgment, concluding, "prohibiting [plaintiff] from operating under the business name "Tire Engineers" when it does not employ tire engineers, does not offer tire engineering services, and does not perform services with the level of skill and training of a tire engineer is a constitutionally permissible protection of the public and of the engineering profession similar to restrictions preventing persons from advertising themselves as a 'public accountant,' 'M.D.' or 'attorney' when the person is neither a certified public accountant, medical doctor, or licensed to practice law.'").

These authorities demonstrate that Oregon's title statutes are appropriate in breadth because they target either professional speech or misleading or false commercial speech. The title statutes are designed to prevent the harm that could occur if an unqualified person were to perform shoddy engineering work that could injure people. These are serious concerns that the legislature addressed in these statutes.

Plaintiff cites the Oregon Court of Appeals decision in *Topaz v. Oregon Board of Examiners for Engineering and Land Surveying*, 255 Or. App. 138 (2013), as contrary to the Board's position in this case. But the petitioner in *Topaz* failed to preserve his First Amendment arguments. That failure prevented the court from addressing whether the speech involved was commercial and, if not, whether the Board's actions were appropriate. None of these issues were presented, so this court should not read too much into the court's ruling there. Moreover, to the extent that court's interpretation of the title statutes is different from the interpretation advanced here, that court's interpretation is entitled to no special weight by this court. It is only the Oregon Supreme Court's interpretations of statutes that are entitled to special weight in any statutory construction analysis. *See State ex rel Huddleston*, 324 Or. at 608 ("When this court interprets a statute, that interpretation becomes a part of the statute as if written therein."); *Davis-*

Page 29 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
             PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Toepfer*, 320 Or. at 741.  Finally, even if the court concludes that Mr. Topaz would have prevailed in his First Amendment challenge, had he brought one, that conclusion does not prove the title statutes are overbroad.  It is just another anecdotal example, like that of Mr. Jarlstrom, of a situation in which a statute was potentially applied unconstitutionally.  Mistaken unconstitutional applications do not render the statute itself facially invalid.

And though this Court need not adjudicate the constitutionality of every prior investigation cited by plaintiff, much less every future potential hypothetical application of the title statutes,[14] some of the examples offered by the plaintiff are either outside the scope of the engineering title statute entirely or are entirely appropriate subjects to regulate.  Plaintiff identifies some investigations of persons who were investigated for using the title "engineer" in campaign literature or in the voter's pamphlet.  Those examples fall outside the scope of the title statute entirely because in none of those examples did the individuals profess to be a registered engineer.  Nor did they, in such a clearly political context, offer to practice engineering.  As discussed above, use of the term "engineer" is not per se disallowed by Oregon law.

Also, using words that falsely suggest a person is a licensed professional in this state on business cards, websites, trade name, advertisements, signs, and by other similar means *can definitely be* appropriate to regulate.  *See, e.g., Gould v. Harkness*, 470 F. Supp. 2d 1357 (S.D. Fla. 2006) (regulation of attorney's proposed advertising on letterhead, business cards, advertisements, and phone book listings permissible); *Maceluch v. Wysong*, 680 F.2d 1062 (5th Cir. 1982) (regulation of the use "M.D." on any means of professional identification was permissible); *U.S. v. Bell*, 414 F.3d 474 (3rd Cir. 2005) (regulation of website as false commercial speech permissible).

---

[14] To the extent that plaintiff relies on hypothetical future activities the plaintiff and others would like to participate in, adjudicating those hypotheticals would constitute an advisory opinion, which this court lacks jurisdiction to issue.

Page 30 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
               PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
TBW/c4m/8975457-v7

Oregon's engineering title statutes and regulations are consistent with state constitutional authority.  These statutes operate either as a legitimate regulation of professional speech or of commercial speech.

      **D.**    **Judicial estoppel principles will prevent the Board from taking a contrary position in the future.**

Plaintiff has argued that he and others are not sufficiently protected by a promise by the Board not to pursue them in the future.  There is no doubt that the Board has now decisively reversed its position on the application of this statute, abandoning the mistaken interpretation that it took in the past. But the Board's positions in this case are far more than a promise.  The Board will be judicially estopped from taking a different position in the future to the extent the court upholds that position.

Judicial estoppel is a well-established equitable principle that bars parties from taking a contrary position to one they previously took and on which they prevailed.  As it has been explained, "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  In *New Hampshire,* 532 U.S. at 755, the Supreme Court applied the doctrine to bar New Hampshire from taking a legal position about the location of its border with Maine different from one it had taken in previous litigation.

If the Board prevails in this facial challenge—or any portion of it—based on its interpretation of the statutes it implements, it will forever be bound by the interpretation of the statutes it advances here.

**IV.    Conclusion**

Judgment should be entered in plaintiff's favor on his as-applied challenge, consistent with Defendants' arguments presented in its motion for entry of judgment.  Defendants' Motion

Page 31 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
           PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

for Entry of Judgment, ECF No. 43.  But on the facial challenges, the court should decline to

address them for all the reasons described in Defendants' prior motion.  Or, if the court does

address the facial challenges, the challenges to the statutes and regulations not applied to plaintiff

should be dismissed and the remaining Oregon laws should be upheld for the reasons described

above.

        DATED June __19__, 2018.

                      Respectfully submitted,

                      ELLEN F. ROSENBLUM
                      Attorney General

                      *s/ Christina L. Beatty-Walters*
                      CHRISTINA L. BEATTY-WALTERS #981634
                      CARLA A. SCOTT  #054725
                      Senior Assistant Attorneys General
                      Trial Attorneys
                      Tel (971) 673-1880
                      Fax (971) 673-5000
                      Tina.BeattyWalters@doj.state.or.us
                      Carla.A.Scott@doj.state.or.us
                      Of Attorneys for Defendants

Page 32 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO
             PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        TBW/c4m/8975457-v7

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000