ELLEN F. ROSENBLUM
Attorney General
CHRISTINA L. BEATTY-WALTERS  #981634
CARLA A. SCOTT  #054725
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Tina.BeattyWalters@doj.state.or.us
        Carla.A.Scott@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATS JARLSTROM, | Case No.  3:17-cv-00652-SB |
| Plaintiff, | REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CHRISTOPHER D. ALDRIDGE, WILLIAM J. BOYD, DAREN L. CONE, SHELLY DUQUETTE, JASON J. KENT, LOGAN T. MILES, RON SINGH, DAVE M. VAN DYKE, SEAN W. ST. CLAIR, AMIN WAHAB, and OSCAR J. ZUNIGA JR., in their official capacities as members of the Oregon State Board of Examiners for Engineering and Land Surveying, | |
| Defendants. | |

## I.      Summary of Argument

If the court chooses to address facial validity, the court should conclude that Oregon's

engineering title and practice statutes are a valid exercise of legislative authority.  The Oregon

Page 1 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT
        TBW/c4m/9094563-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Legislative Assembly sought to regulate nothing more than the professional practice of engineering in the engineering practice statute (ORS 672.005(1)(b)).  And in the title statute (ORS 672.007(1)(c)), it sought to regulate nothing more than the solicitation of engineering business by persons who are not qualified in Oregon to conduct that business.  These are permissible regulations under the First Amendment.  The Board's erroneous prior interpretations of these statutes should not nullify the statutes enacted decades ago by the Legislative Assembly to protect the health and safety of Oregonians and Oregon's visitors.  Like other professional regulations in this state and around the country, the engineering practice and title statutes should stand.

In any case, plaintiff will receive full relief from the entry of the as-applied relief he seeks.  Whatever its form, plaintiff is now and will be able to continue doing the work for which the Board pursued him.

## II.    Argument

### A.    Plaintiff lacks standing to challenge the entirety of the engineering title and practice statutes.

Plaintiff lacks standing to challenge the provisions of the engineering title and practice statute that the Board did not enforce against him in its enforcement action.  Plaintiff suggests he has standing by referencing pre-enforcement statutory challenges, which are not applicable here, and by listing a host of hypothetical nonspecific activities he would like to engage in someday and somewhere.  Plaintiff's arguments fail.

First, plaintiff's pre-enforcement cases have no bearing here because this is not a pre-enforcement case.  Plaintiff also failed to address the authorities the Board relies upon.  Those authorities establish that a governmental entity's enforcement of one provision of a statute does not give the subject of the enforcement action standing to challenge other provisions as well. *See, e.g., Maverick Media Group, Inc. v. Hillsborough County*, 528 F.3d 817, 822 (11th Cir. 2008) (noting that the "overbreadth doctrine does not. . . grant a plaintiff carte blanche to challenge an

Page 2 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT
        TBW/c4m/9094563-v1

entire ordinance merely because some part of the ordinance—to which the plaintiff is not subject—might be unconstitutional"). Moreover, even if the pre-enforcement standing authorities plaintiff relies upon were applicable here, plaintiff has not met the applicable standard because he has not "articulated a 'concrete plan' to violate the law in question" nor have "prosecuting authorities . . . communicated a specific warning or threat to initiate proceedings." *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).

Mr. Jarlstrom has not indicated anything more than vague desires to engage in some unspecified activities in some unspecified place at some unspecified time with or for some unspecified people. These vague desires are far from being a concrete plan necessary to establish standing. Nor are these vague desires necessarily a violation of any law. And, in any case, the undisputed facts demonstrate that there is no specific warning or threat to initiate proceedings against him. The facts are to the contrary. The Board has admitted that it erred in enforcing the provisions it enforced against him and that it violated his constitutional rights. The Board has also admitted that he is entitled to entry of as-applied relief and has actually filed a motion seeking entry of that relief on his behalf. That is the exact opposite of a threat of enforcement.

Mr. Jarlstrom has failed to prove he has standing to challenge the provisions of the statute the Board did not enforce against him. As a result, he lacks standing to challenge ORS 672.005(1)(a), ORS 672.007(1)(a) and (b), and OAR 820-010-0730(3)(a) and (b).

**B.    The engineering practice statutes at issue are constitutional.**

**1.    The Board's interpretation of the practice statute is consistent with text and context.**

Plaintiff does not offer an interpretation of the text of the engineering practice statute that he challenges. Rather, he asserts that the Board's interpretation is erroneous because (1) it is inconsistent with one of the statutory exemptions; (2) it would cause "professional service" and

Page 3 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
TBW/c4m/9094563-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"creative work" to have the same meaning; and (3) legislative history and the Board's other arguments should be summarily disregarded. Plaintiff is wrong.

First, the Board's interpretation of ORS 672.005(1)(b) is consistent with the statutory exceptions. Notably, there are 20 statutory exceptions to the application of the statutes governing the Board. *See* ORS 672.060. Plaintiff would have the court read one of those exceptions to dictate the meaning and reach of the entire statutory scheme. In plaintiff's view, the entire statute should be given a broad reach—to effectively prohibit persons from doing math without a license—because the legislature used the word "individual" in one of the 20 narrow exceptions. *See* ORS 672.060(5). This "tail wagging the dog" argument should be rejected.

The exception in ORS 672.060(5) is very narrow. It provides that practice and title statutes do not apply to engineering work performed on, and exclusively affecting, certain specific property—property that is owned, leased or possessed "by the individual, firm, partnership, or corporation" doing the work but only when the public health and safety will not be affected. The fact that the legislature carved out a very narrow exception to the application of the title and practice statutes related to specific property does not suggest the legislature intended the statute to have the broad sweep plaintiff suggests.

Second, the statutory phrases "professional service" and "creative work" do not mean exactly the same thing. The relevant point, for purposes of this case, is that both statutory phrases indicate that they include work done for or on behalf of someone else, whether a client or an employer. However, professional service is a much broader term than creative work. Creative work (work that "ha[s] the quality of something created rather than imitated or assembled: [that is] expressive of the maker: imaginative" (*Webster's Third New Int'l Dictionary* 532 (unabridged ed. 1971)) would include engineering design work, for example, but not the analysis and re-analysis of an existing structure or project. Professional services would include analyses of existing structures and projects as well as any other types of services that engineers perform that aren't creative, such as advising clients about engineering analyses. The

Page 4 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT
            TBW/c4m/9094563-v1

important point for present purposes, though, is that both phrases include activities performed for or on behalf of someone else.

Third, plaintiff's failure to respond to the substance of the Board's other arguments is notable. Plaintiff brushes off legislative history on the ground that it contains some unintelligible portions. (The pertinent legislative history is maintained by the Archives Division of the Office of Secretary of State on audio tapes that are about 45 years old. *See, e.g.,* OAR 166-005-0000-0005.) But of course that argument fails to consider the comments that *can* be discerned in the legislative history. That history must be considered and it supports the Board's interpretation. Declaration of Christina Beatty-Walters, Ex. 2, p. 11-17.

Plaintiff also ignores the context of the engineering practice statute entirely. That context includes ORS chapter 670, which expressly includes reference to the Board. *See* ORS 670.304(6). ORS chapter 670 leaves little doubt that the engineering practice statute was designed to regulate the practice of the profession of engineering. ORS 670.304 refers expressly to the Board as a "professional licensing and advisory board," and ORS 670.275 notes it is state policy for these professional boards to "protect[] the public through the licensing and regulating of certain professions practiced in this state." The legislature declared its intent that professional licensing and advisory boards "retain responsibility for decisions on qualifications, standards of practice, licensing, discipline and other discretionary functions relating to professional activities." ORS 670.275. Nothing about the context of the engineering practice statute suggests it should be read so broadly as to capture doing math or engaging in scientific endeavors on one's own time.

Plaintiff also summarily dismisses other indications of the legislature's intent to limit the definition of practice of engineering. The legislature gave the Board the authority to recognize branches of engineering on which examinations are given. ORS 672.255(1)(d). It also granted the Board authority to prescribe standards and qualifications for examination. ORS 672.255(f). Accordingly, licensure is required only in those branches recognized by the Board on which

Page 5 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT

examinations are given.  Necessarily then, the Board has no authority to require licensure, or pursue a person for unlicensed practice, if the Board has not recognized the relevant branch.

The text and context of ORS 672.005(1)(b) demonstrate that the legislature intended to regulate only the professional practice of engineering.

## 2.     The practice statute is constitutional.

The engineering practice statute is consistent with the Constitution because it regulates the practice of engineering.  Although speech by professionals is not always subject to regulation by the state, the practice of professions that includes speech incidental to that practice *is* subject to regulation.  Because that is all the Oregon engineering practice statute regulates, it is constitutional.

Plaintiff cites to the Supreme Court's recent decision in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) to argue that the engineering practice statute is overbroad.  Plaintiff is mistaken.  The Court declined to recognize the "professional speech" doctrine as such, without "foreclos[ing] the possibility" that it might recognize the doctrine in the future.  *Id*. at 2374.  But, significantly, the Court reaffirmed the legitimate constitutional basis of professional regulations generally.  It explained that "States may regulate professional conduct, even though that conduct incidentally involves speech."  *Id*. at 2372.   That is consistent with the Board's position in this case:  the State of Oregon has the authority to regulate professional conduct with an incidental impact on speech, including the practice of engineering.  That's all the statute in question does.

The Board's position has always been that the statute is constitutional because it is a regulation of "conduct with only an incidental impact on speech."  *See* Defendant's Motion, ECF No. 79, p. 25.  This is no different from professional regulations that have long been upheld.  The Supreme Court upheld a state law that "regulated speech only 'as part of the *practice* of medicine, subject to reasonable licensing and regulation by the State.'"  *Becerra*, 138 S. Ct. at 2373 (*quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992)).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

And the Ninth Circuit upheld a California law that regulated certain therapies performed by psychologists, therapies that consist solely of speech, as part of the practice of psychology. *Pickup v. Brown*, 740 F.3d 1208, 1229-31 (9th Cir. 2014).

Ignoring these authorities, plaintiff suggests that all professional regulations—or at least all those governing engineers—should be ruled unconstitutional because they are based only on "labels like 'professional,' 'profession,' and 'practice.'"  Plaintiff's Reply, ECF No. 82, p. 20. Then he mischaracterizes the Board's position here in arguing that using these labels enables the Board to restrict the speech of anyone speaking about math or science.  Of course, that's not the Board's position at all.  Labels have nothing to do with it.

Plaintiff points to three examples where a state regulated or investigated the unregistered practice of engineering—two by the Board and one by Washington's sister board.  None of these examples is proof that Oregon's engineering practice statute is overbroad.  Mr. LaForest and Mr. Somasundaram in Oregon and Mr. Knight in Washington all were retained by a client to perform engineering analysis and to provide engineering advice—the critical fact that plaintiff conveniently omits.[1]  In other words, they were all hired to perform a professional service that constitutes the practice of engineering.  Contrary to what plaintiff suggests, what these individuals, and the persons and entities who hired them, did with that analysis is not the point and not what the engineering practice statute is designed to regulate.  The critical point is that they were engaged by a client to analyze and advise using their engineering expertise and they did so.  That conduct required a license.  As would the performance of engineering work by a person whose church elders asked her to undertake an engineering analysis.  Plaintiff incorrectly

---

[1] *See Knight v. Brown,* 2007 WL 1847245 *1 (W.D. Wash. 2007) (quoting letter from plaintiff stating that he had "'been retained by the neighbors to evaluate engineering proposal [sic] and to make suggestions that would improve the project'"); *Declaration of Dale LaForest,* Ex. 1 (stating, "LaForest prepared for a client a report. . ."); *Declaration of Samuel Gedge*, Ex. 5, p. 3 (stating that company "was hired as an 'expert consultant' to provide a professional opinion of the Riverbend landfill geotechnical reports").

Page 7 -    REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT
            TBW/c4m/9094563-v1

assumes these examples demonstrate overbreadth.  But they do not because they are subjects of legitimate state regulation.

Plaintiff next suggests the Board has failed to meet the applicable level of scrutiny because the Board did not create a factual record to justify that state's interest in regulating engineers.  But rational basis review applies here because the Board is primarily regulating conduct with an incidental impact on speech.  *See Casey*, 505 U.S. at 884, 967-68; *Pickup*, 740 F.3d at 1231.  And under that deferential level of scrutiny, the State of Oregon is not required to allow harm to occur from the unregulated and shoddy practice of engineering to show that it has a compelling interest in regulating the practice.  It is obvious that the state's interest in regulating the practice of engineering—to "safeguard life, health and property"—is a legitimate one.  *See Pickup*, 740 F.3d at 1231 (noting that rational basis review requires only a "rational relationship to a legitimate state interest"); ORS 672.020.  The Supreme Court has long recognized that states have legitimate interests in regulating the practice of professions.  *Watson v. State of Maryland*, 218 U.S. 173, 176 ("It is too well settled to require discussion at this day that the police power of the states extends to regulation of certain trades and callings, particularly those which closely concern public health."); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) ("We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.").  And requiring practitioners to be both qualified and registered in order to practice a learned profession like engineering is a rational means to advance the state's interest in protecting the public's health and safety.  For these reasons, the engineering practice statutory and regulatory provisions under which plaintiff was pursued and cited— ORS 672.005(1)(b), ORS 672.020(1), ORS 672.045(1), OAR 820-040-0030(1)(b), (2)(a), and OAR 820-010-0730(3)(c)—are a legitimate exercise of state authority.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**C.**      **The engineering title statutes at issue are constitutional.**

Plaintiff argues that the Oregon Legislative Assembly took "truthful speech, declare[d] it false, and punish[ed] the speaker."  Plaintiff's Reply, ECF No. 82, p. 26.  But plaintiff is wrong, and that is not responsive to the Board's argument.  As the Board explained in its opening brief, the definition of "engineer" in the statute—like every statutory definition in every statute— defines the term only for purposes of its use in the statute itself.  In other words, where the term "engineer" appears in the statute, the Legislative Assembly meant that term to have the meaning it ascribed to the term.  Thus, properly construed, the engineering title statute does not "ban" any term from use at all.  What the title statute does do is prohibit a person from offering or soliciting their services as an engineer when, in fact, she has not proven herself qualified to perform those services.

Plaintiff raises several arguments.  Plaintiff argues that the "Oregon courts have already held that the title law reaches beyond commercial speech," but that is not correct.  Plaintiff's Reply, ECF No. 82, p. 27.  In *Topaz v. Oregon Bd. of Examiners for Engineering and Land Surveying,* 255 Or. App. 138 (2013), the court applied the engineering title statute without considering whether the First Amendment, including the commercial speech doctrine, should apply or affect the court's interpretation of the statute.  Because the petitioner did not preserve any First Amendment challenge there, that opinion is of limited benefit.  The court did not have an opportunity to confront the issue before the court here.

Plaintiff also argues that the statute "bans non-licensees from using the title 'engineer' even when the title does not imply 'registered professional engineer.'" Plaintiff's Reply, ECF No. 82, p. 28.  Plaintiff references specifically ORS 672.007(1)(b), which provides that "a person is practicing or offering to practice engineering if the person. . . Through the use of some other title implies that the person is an engineer or a registered professional engineer."  But plaintiff's argument is contrary to the plain reading of the statute.  The term "engineer" in the statute *means the exact same thing as a professional engineer and the exact same thing as a registered*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*professional engineer.* ORS 672.002(2).  The Legislative Assembly expressly provided that the three terms are interchangeable and all mean an "individual who is registered in this state and holds a valid certificate to practice engineering in this state as provided under ORS 672.002 to 672.325." ORS 672.002(2).  Nothing in the statute indicates that the Legislative Assembly intended anything in ORS 672.007(1)(b) by the defined terms other than as specifically provided in the statutory definition.

Plaintiff argues that the Board's statutory interpretation is problematic due to its prior applications of the statute.  But as the Board has explained, it has previously erred in its application of the engineering title statute.  The engineering title statute does not categorically prohibit persons from using the title "engineer."   That is particularly true given that the Board does not regulate every branch of engineering.  But even for branches the board does regulate, a person only violates the engineering title provisions of ORS 672.007(1)(c), ORS 672.020(1) and ORS 672.045(2) if she falsely or misleadingly holds herself out as available to practice a branch of engineering in Oregon requiring licensure when she is, in fact, not licensed.  This is considered an offer to practice and is not permissible.  If a person communicates that she is an engineer but is not effectively offering her services as a professional engineer with that communication, that use is not subject to Board regulation.

**D.    Judicial estoppel will bind the Board.**

The Board's legal positions in this case along with this court's ruling upholding those positions would bind the Board in all future interpretations of the statutes in question.  This well-recognized legal principle, judicial estoppel, functions as a backstop to any future Board backsliding.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Plaintiff contends judicial estoppel is an insufficiently protective tool though because outdated authority from another circuit suggests that judicial estoppel may not bind nonparties. Plaintiff is wrong.

The authority plaintiff cites for the proposition that judicial estoppel may sometimes not be applied to benefit nonparties is outdated, out of circuit, and factually distinguishable.

Page 10 -  REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
          JUDGMENT
          TBW/c4m/9094563-v1

Significantly, it is not a First Amendment overbreadth case in which a party is pursuing a claim expressly on behalf of unknown third parties. *See Nichols v. Scott*, 69 F.3d 1255, 1272 (5th Cir. 1995) (noting that two circuits at that time had not recognized the doctrine of judicial estoppel). Plaintiff cites no authority suggesting that judicial estoppel would not apply—in any circuit—to a government that prevailed on the basis of its statutory interpretation on an overbreadth claim. Of course it would.

Plaintiff's other arguments should also be rejected. He argues that judicial estoppel wouldn't apply because later targets of Board investigation may hypothetically be ignorant of the defense and fail to raise it. Plaintiff cites no authority to support that proposition. Nor has the Board, contrary to plaintiff's suggestion, hidden its interpretation of the statutes at issue. It has, in fact, published those positions in publicly available filings in this court, including this one. Plaintiff also argues judicial estoppel is little more than *noblesse oblige*. Of course, that's wrong because the doctrine is based not just upon a party's position but also a judgment entered in reliance on that position.

The Board has undoubtedly made errors in the manner in which it has applied the engineering practice and title statute, both here and in past applications. But the Board's position here represents a clean break from those earlier interpretations. The Board's prior errors do not and should not doom the work the Legislative Assembly did long ago to protect the life, health, safety, and property of Oregonians and its visitors by ensuring the practice of engineering and offers to practice engineering are only done only by those who have proven they are qualified.

### E.    Plaintiff is entitled to as-applied relief.

Of course, the Board has already taken the position that plaintiff is entitled to as-applied relief. The Board objects, however, to provisions in his requested form of relief, by which the Board understands plaintiff to refer to the first two numbered paragraphs in the form of preliminary injunction. First, the term relating to engineering practice is not objectionable, except that the term "paid" should be excluded. The existence of a professional relationship and

Page 11 - REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
TBW/c4m/9094563-v1

the application of professional standards do not depend on whether or not the professional is paid.

Second, with respect to the title term, the Board objects to plaintiff's requested relief only to the extent such a categorical rule applicable to plaintiff alone (1) could permit him to mislead people into believing he is a registered engineer when he is not and (2) goes beyond his need for as-applied relief. Plaintiff's right to call himself an engineer in a published article, political speech, petitions to government, or casual conversation is not disputed. But his use of the term engineer should not be permanently categorically permitted on letterhead, business cards, or a website designed to attract engineering clients, for example, if that term is intended to convey a credential to practice in a branch of engineering that is a licensed branch in Oregon. Context is important, and Mr. Jarlstrom should not be entitled to trade on a credential he has not obtained. Moreover, relief as broad as Mr. Jarlstrom suggests would not be as-applied relief because it would be no answer for the activities about which the Board pursued him. Mr. Jarlstrom was pursued and cited by the Board for calling himself an engineer in a context that the engineering title statute does not address. The relief he is awarded should be as narrow.

**F.    There is no need for facial relief here.**

Plaintiff claims a pressing need for facial relief, but he will be protected by the as-applied relief to be awarded to him. And because the Board has now correctly interpreted the statute and will forever be bound by its interpretation under the principles of judicial estoppel, there is no need for the court to enter relief on the overbreadth claim.

To the extent the court disagrees and chooses to provide some relief on the overbreadth claim, any relief should be narrowly applicable only to those similarly situated to Mr. Jarlstrom. Further, statutory and regulatory provisions not challenged or objectionable should be severed from those that are challenged and objectionable and those provisions should stand.

ORS 174.040.

Page 12 -  REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
          JUDGMENT
          TBW/c4m/9094563-v1

III.    **Conclusion**

For all the reasons described above and in the Defendants' Motion for Summary

Judgment, the Board's motion should be granted and plaintiff's motion should be denied.


DATED August  7 , 2018.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


_s/ Christina L. Beatty-Walters_
CHRISTINA L. BEATTY-WALTERS #981634
CARLA A. SCOTT  #054725
Senior Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Tina.BeattyWalters@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Of Attorneys for Defendants


Page 13 -  REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
       JUDGMENT
       TBW/c4m/9094563-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000