IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATS JÄRLSTRÖM,

                              Plaintiff,

        v.

CHRISTOPHER D. ALDRIDGE, WILLIAM
J. BOYD, DAREN L. CONE, SHELLY MC
DUQUETTE, JASON J. KENT, LOGAN T.
MILES, RON SINGH, DAVE M. VAN
DYKE, SEAN W. ST. CLAIR, AMIN
WAHAB, and OSCAR J. ZUNIGA JR., in
their official capacities as members of the
Oregon State Board of Examiners for
Engineering and Land Surveying,

                              Defendants.

Case No. 3:17-cv-00652-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Mats Järlström ("Plaintiff") brings this action against members of the Oregon

State Board of Examiners for Engineering and Land Surveying ("Board"), seeking declaratory

and injunctive relief under 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff

challenges the constitutionality of certain provisions of Oregon's Professional Engineer

Registration Act, Or. Rev. Stat. §§ 672.002-672.325, *et seq.* (the "Act"). Specifically, Plaintiff

alleges that Or. Rev. Stat. § 672.005(1)(a)-(b); Or. Rev. Stat. § 672.007(1); Or. Rev. Stat. § 672.020(1); Or. Rev. Stat. § 672.045(1); Oregon Administrative Rule ("OAR") 820-010-0730(3); and OAR 820-040-0030 (collectively, the "Practice laws"), and Or. Rev. Stat. § 672.002(2); Or. Rev. Stat. § 672.007(1); and OAR 820-010-0730(3) (collectively, the "Title laws"), violate the First Amendment, both as applied to Plaintiff and on their face.[1]

Plaintiff filed a motion for summary judgment. (ECF No. 72.) The Board filed a cross-motion for summary judgment, admitting liability on Plaintiff's as-applied challenge but opposing Plaintiff's facial challenge. (ECF No. 79). The Court has jurisdiction under 28 U.S.C. § 1331, and all parties consent to the jurisdiction of a U.S. Magistrate Judge under FED. R. CIV. P. 73(b). For the following reasons, the Court grants the Board's motion for summary judgment with respect to Plaintiff's facial challenge to the Practice laws, and grants Plaintiff's motion for summary judgment with respect to all other issues.

## BACKGROUND

The material facts are not in dispute. Plaintiff is a resident of Washington County, Oregon, a lawful permanent resident of the United States, and a citizen of the Kingdom of Sweden. (Compl. ¶ 8; Answer ¶ 7.) Plaintiff earned the equivalent of a Bachelor of Science degree in electrical engineering in Sweden and has spent his career working in the field of electronics. (Compl. ¶¶ 12-15; Answer ¶ 9.) He does not have a professional engineering license to practice in any state. (Compl. ¶ 28; Answer ¶ 22.)

In May 2013, Plaintiff became interested in traffic light timing after his wife received a "red-light-camera" ticket. (Compl. ¶ 11; Answer ¶ 9.) Plaintiff spent three years analyzing the

---

[1] Plaintiff includes Or. Rev. Stat. § 672.045(2) and Or. Rev. Stat. § 672.020(1) in his challenge to the Title laws. (ECF No. 1.) These provisions, however, do not restrict the use of the title "engineer," and therefore the Court does not include those sections in its analysis of the Title laws.

standard method for calculating the duration of a yellow light and found that the formula failed to account for drivers who must slow down to make a legal turn. (Compl. ¶¶ 16-17; Answer ¶¶ 10-11.)

In September 2014, Plaintiff emailed the Board and asked for "support and help" in an attempt to further his research and broadcast his findings. (Compl. ¶¶ 24-25; Answer ¶¶ 18-19.) The Board responded two days later, informing Plaintiff that he violated engineering laws by referring to himself as an "electronics engineer" and stating "I'm an engineer." (Compl. ¶¶ 26-27; Answer ¶¶ 20-21.) The Board advised Plaintiff to stop using those titles until he registered with the Board. (Compl. ¶ 29; Answer ¶ 23.) Undeterred, Plaintiff continued to discuss his ideas with the public, including the National Council of Examiners for Engineering and Surveying, the *60 Minutes* news program, a local news station, and the physicist who created the original traffic light timing formula. (Compl. ¶¶ 31-32; Answer ¶ 23.) In at least one of those communications, Plaintiff described himself as an "engineer," including in further emails to the Board. (Compl. ¶¶ 37-38; Answer ¶¶ 26-27.)

On February 12, 2015, the Board's Law Enforcement Committee conducted a preliminary evaluation and voted to open a "law enforcement case" against Plaintiff. (Compl. ¶ 43; Answer ¶ 32.) In November 2016, the Board imposed a $500 civil penalty for Plaintiff's violations of Or. Rev. Stat. § 672.020; Or. Rev. Stat. § 672.045(1) and (2); and OAR 820-010-0730. (Compl. ¶¶ 72-74; Answer ¶¶ 50-52.) Specifically, the Board concluded that Plaintiff violated Or. Rev. Stat. § 672.020(1), Or. Rev. Stat. § 672.045(1) and (2), and OAR 820-010-0730(3)(a) and (c) by critiquing the traffic light timing formula and submitting his critiques to members of the public, and by "asserting to the public media" and "to a public body" that he is an engineer. (Mats Järlström Decl., Ex. 14 ¶¶ 13-17.) Plaintiff paid the $500 penalty. (Järlström

Decl. ¶ 26.) On January 10, 2017, the Board issued its Final Order finding Plaintiff in violation of Or. Rev. Stat. § 672.020(1), Or. Rev. Stat. § 672.045(1) and (2), and OAR 820-010-0730(3)(a) and (c). (Järlström Decl., Ex. 15.)

In April 2017, Plaintiff filed this case alleging that Oregon's engineering practice and title laws violate the First Amendment's Speech and Petition Clauses both facially and as applied to Plaintiff. (Compl. ¶¶ 103-146; Answer ¶¶ 76-116.) On August 18, 2017, the Board refunded the $500 fine to Plaintiff. (Järlström Decl., Ex. 17.) Plaintiff moved for summary judgment in May 2018. (Mot. for Summ. J.) The Board filed a cross-motion for summary judgment, asking the Court to provide only as-applied relief. (Mot. for Summ. J.; Resp. to Mot. for Summ. J.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### II. DISCUSSION

#### A. First Amendment

The First Amendment, applied to the states through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. CONST. amend. I. Plaintiff brings an as-applied and

facial challenge to the Practice and Title laws, arguing that they are overbroad and violate the First Amendment's Speech and Petition Clauses.[2] The distinction between an as-applied and facial challenge affects Plaintiff's "burden of establishing [a statute's] unconstitutionality." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1174 (9th Cir. 2018). If the challenge is only to the application of the law, Plaintiff "must show only that the statute unconstitutionally regulates" his own speech. *Id.* When the challenge is facial, however, Plaintiff must either show that "no set of circumstances exists under which [the challenged law] would be valid, or that it lacks any plainly legitimate sweep." *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1314-15 (9th Cir. 2015) (alteration in original) (citation and quotation marks omitted). Plaintiff asks the Court to declare the Practice laws facially overbroad, and declare the Title laws either facially overbroad or invalid in all applications. (Pl.'s Reply at 25.)

### 1. As-Applied Challenge

Plaintiff and the Board agree that the Practice and Title laws violate the First Amendment as applied to Plaintiff, and therefore the Court enters summary judgment in favor of Plaintiff on his as-applied challenges.

///

---

[2] In addition to protecting speech, the First Amendment also protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. Because "[t]he Framers envisioned the rights of speech, press, assembly, and petitioning as interrelated components of the public's exercise of its sovereign authority," courts "have recurrently treated the right to petition similarly to, and frequently as overlapping with, the First Amendment's other guarantees of free expression." *McDonald v. Smith*, 472 U.S. 479, 489-90 (1985) (Brennan, J., concurring). More recently, the Supreme Court has cautioned against presuming "that Speech Clause precedents necessarily and in every case resolve Petition Clause claims." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 389 (2011). "There may arise cases where the special concerns of the Petition Clause would provide a sound basis for a distinct analysis." *Id.* The parties here do not ask for a distinct analysis, and since "[t]he considerations that shape the applications of the Speech Clause to [Plaintiff] apply with equal force to claims . . . under the Petition Clause," the Court will analyze the Petition claim under the same standards as the Speech claim. *Id.*

## 2. The Practice Laws

Before reaching the merits of Plaintiff's overbreadth challenge to the Practice laws, the Court must first determine whether overbreadth review is appropriate in light of Plaintiff's successful as-applied challenge.

The Practice laws that Plaintiff seeks to invalidate generally prohibit any person from practicing or offering to practice engineering in Oregon unless the person is registered to practice engineering in Oregon. *See* Or. Rev. Stat. §§ 672.020(1) and 672.045(1); OAR 820-010-0730(3). The Practice laws define the "practice of engineering" to include "[p]erforming any professional service or creative work requiring engineering education, training and experience" and "[a]pplying special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, testimony, evaluation, planning, design and services during construction, manufacture or fabrication for the purpose of ensuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects." Or. Rev. Stat. § 672.005(1)(a)-(b).

The Supreme Court has instructed that courts should address an as-applied challenge before an overbreadth challenge. *See Bd. of Tr. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-86 (1989) (cautioning against reaching an overbreadth issue before "it is determined that the statute would be valid as applied"); *see also Brockett v. Spokane Arcades*, 472 U.S. 491, 504 (1985) (noting that the overbreadth doctrine has limited value "where the parties challenging the statute are those who desire to engage in protected speech" because "[t]here is then no want of a proper party to challenge the statute, no concern that an attack on the statute will be unduly delayed or protected speech discouraged"); *Members of City Council of L.A. v. Taxpayers for Vincent et al.*, 466 U.S. 789, 798 (1984) (finding overbreadth review inappropriate where the

plaintiffs "failed to identify any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to [them]"). This sequence avoids converting the overbreadth doctrine "into a means of mounting gratuitous wholesale attacks upon state and federal laws." *Id.* Many courts have concluded that a successful as-applied challenge precludes the overbreadth inquiry. *See Serafine v. Branaman*, 810 F.3d 354, 362-63 (5th Cir. 2016) (declining to address the overbreadth of a statute found invalid as applied to plaintiff); *U.S. v. Popa*, 187 F.3d 672, 678 (D.C. Cir. 1999) (refusing to "go on to inquire whether the statute is overbroad" after finding statute invalid as applied); *Jacobsen v. Howard*, 109 F.3d 1268, 1274-75 (8th Cir. 1997) (vacating part of a judgment because the district court erred in considering an overbreadth challenge after a successful as-applied challenge).

The Ninth Circuit has generally allowed overbreadth review following a successful as-applied challenge, but only if the challenged law presents an "unacceptable risk of the suppression of ideas." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997) ("Technically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression" but plaintiffs still "may seek directly on their behalf the facial invalidation of overly broad statutes that create an unacceptable risk of the suppression of ideas.") (citation and quotation marks omitted). For example, in *Lind v. Grimmer*, 30 F.3d 1115 (9th Cir. 1994), the plaintiff sought to invalidate a Hawaii law requiring confidentiality around campaign spending investigations. The court held that the law was unconstitutional as applied to the plaintiff's speech, but went on to assess overbreadth because "after striking the portion of [the statute] that is unconstitutional as applied to Lind, and even assuming that the statute may have some constitutional applications, we are left with the fact that

[the statute] has numerous other potential applications that are unconstitutional." *Lind*, 30 F.3d at 1122.

The Supreme Court has made clear that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Vincent*, 466 U.S. at 801. Here, Plaintiff has not demonstrated a realistic danger that the Practice laws will significantly compromise the First Amendment rights of parties not before the Court. Aside from Plaintiff's successful as-applied challenge here, Plaintiff points only to the Board's enforcement actions against Dale La Forest and Suji Somasundaram as evidence of the Practice laws' potentially unconstitutional reach. (Pl.'s Mot. Summ. J. at 22.) In Plaintiff's view, the Board punished La Forest and Somasundaram simply for their speech critical of public projects. (Pl.'s Mot. Summ. J. at 21.) However, the record reflects that, unlike Plaintiff here, La Forest and Somasundaram did not engage in engineering on their own behalf. Rather, they were engaged by clients to provide professional engineering analysis and advice. *See* Dale La Forest Decl., Ex. 1 at 2 (stating that "La Forest prepared for a client a report . . ."); Samuel Gedge Decl. ¶ 7, Ex. 5, at 3 (stating that his company "was hired as an 'expert consultant' to provide a professional opinion"); Gedge Decl. ¶ 45, Ex. 43, at 1 (stating that Somasundaram prepared a memo "[a]t the request of Stop the Dump Coalition"). Whereas the Board's application of the Practice laws to Plaintiff was unconstitutional because he was not providing a professional service, its application to these other individuals appears to fall within the statutes' constitutional sweep.

The Supreme Court has long recognized that states have broad authority to regulate the practice and licensing of certain professions. *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) ("States have a compelling interest in the practice of professions within their

boundaries, and . . . as part of their power to protect the public, health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.") (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)); *see also Watson v. State of Md.*, 218 U.S. 173, 176 (1910) ("It is too well settled to require discussion" that "the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health."); *Dent v. W. Va.*, 129 U.S. 114, 122 (1889) ("[I]t has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely."). The Supreme Court has recently reaffirmed the continuing validity of professional licensing regulations. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) ("States may regulate professional conduct, even though that conduct incidentally involves speech.") (citation omitted).

Plaintiff has not demonstrated that the Practice laws present an unacceptable risk of the suppression of ideas, and therefore the Court declines to reach Plaintiff's overbreadth challenge.[3] *See N.Y. v. Ferber*, 458 U.S. 747, 769 (1982) ("[T]he overbreadth doctrine is strong medicine" and should be employed "with hesitation, and then only as a last resort."); *Broadrick v. Okla.*, 413 U.S. 601, 615 (1973) (recognizing that the importance of the overbreadth doctrine "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct" and that "whatever overbreadth may exist should be cured through case-by-case analysis"); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S.

---

[3] The Court notes that the Board has promulgated new regulations that will prevent the Board from applying the Practice laws to Plaintiff's proposed future activities, as well as to those of any similarly-situated individuals engaged in engineering outside of a commercial or professional context. *See* Joint Stip. Facts ¶ 6 & Ex. 8 at 2 (clarifying that "professional service" and "creative work" apply only to labor "provided in a commercial or professional context").

442, 450 (2008) ("Exercising judicial restraint in a facial challenge frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.") (citation and quotation marks omitted).

### 3.        The Title Laws

The Court next addresses Plaintiff's facial challenge to the Title laws. Unlike his challenge to the Practice laws, Plaintiff does not rely solely on the overbreadth doctrine. Instead, Plaintiff also argues that the Title laws are unconstitutional in every application. (Pl.'s Mot. Summ. J. at 28.)

### a.        Relevant language

The Title laws define "engineer," "professional engineer," and "registered professional engineer" to mean "any individual who is registered in this state and holds a valid certificate to practice engineering in this state[.]" Or. Rev. Stat. § 672.002(2). The Title laws provide that a person is practicing or offering to practice engineering if the person: "(a) By verbal claim, sign, advertisement, letterhead, card or in any other way implies that the person is or purports to be a registered professional engineer; (b) Through the use of some other title implies that the person is an engineer or a registered professional engineer; or (c) Purports to be able to perform, or who does perform, any service or work that is defined . . . as the practice of engineering." Or. Rev. Stat. § 672.007(1). The Title laws prohibit any person from holding themselves out as an "engineer" unless registered as a professional engineer in Oregon. *See* Or. Rev. Stat. § 672.007(1); OAR 820-010-0730(3).

### b.        Standing

The Board argues that Plaintiff does not have standing to challenge Or. Rev. Stat. § 672.007(1)(a)-(b) or OAR 820-010-0730(3)(b),[4] because the Board did not apply those specific subsections to Plaintiff. (Def.'s Mot. Summ. J. at 7); *see Get Outdoors II, LLC v. Cty. of San Diego, Cal.*, 506 F.3d 886, 891-92 (9th Cir. 2007) ("Even when raising an overbreadth claim," a plaintiff "cannot leverage its injuries under certain, specific provisions to state an injury . . . generally."). Plaintiff claims that he has standing to challenge those provisions due to his fear of future enforcement, which is credible because each of the provisions either: (1) has been enforced against him; (2) has been cited to him as a warning; (3) has been enforced against similarly situated individuals; or (4) is materially identical to provisions the Board acknowledges Plaintiff has standing to challenge. (Pl.'s Reply at 30-31.)

As an initial matter, the Court agrees that Or. Rev. Stat. § 672.007(1)(c) is sufficiently intertwined with and related to Or. Rev. Stat. § 672.007(1)(a)-(b), and OAR 820-010-0730(3)(a) and (c) are sufficiently intertwined with and related to OAR 820-010-0730(3)(b) to confer standing on Plaintiff to challenge each subsection of the Title laws, rather than just the specific subsections for which he was cited. In any event, Plaintiff also satisfies pre-enforcement standing requirements.

First Amendment challenges "present unique standing considerations" because of the "chilling effect of sweeping restrictions" on speech. *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). To avoid this chilling effect, the "Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than

---

[4] The Board also challenges Plaintiff's standing to challenge OAR 820-010-0730(3)(a), but the Board did find that Plaintiff violated OAR 820-010-0730(3)(a). (*See* Järlström Decl., Ex. 15 at 8.)

requiring litigants to speak first and take their chances with the consequences." *Id.* (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). In the pre-enforcement context, a plaintiff can establish standing by "demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). "It is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citation omitted).

"Even in the First Amendment context, a plaintiff must show a credible threat of enforcement." *Italian Colors*, 878 F.3d at 1171. In assessing whether the threat of enforcement is credible, the Ninth Circuit considers three factors: (1) whether plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *City and Cty. of S.F. v. Trump*, 897 F.3d 1225, 1236 (9th Cir. 2018) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).[5]

Plaintiff has standing to challenge Or. Rev. Stat. § 672.007(1)(a)-(b) and OAR 820-010-0730(3)(b). These provisions govern use of the title "engineer." The Board argues that Or. Rev. Stat. § 672.007(1)(a)-(b) is limited to acts and statements that communicate an offer by an unlicensed person to practice engineering. (Def.'s Mot. Summ. J. at 24, n.13.) The text of the statute is not so limited. As even the Board acknowledges, Or. Rev. Stat. § 672.007(1) applies if

---

[5] Although *Thomas* articulated these factors when discussing ripeness, "the ripeness inquiry merges almost completely with standing" when "measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical[.]" *Thomas*, 220 F.3d at 1139.

a person uses a title that suggests licensure. (Def.'s Mot. Summ. J. at 26.) Using the title "engineer" suggests licensure because Or. Rev. Stat. § 672.002(2) defines "engineer" to mean "an individual who is registered in [Oregon] and holds a valid certificate to practice engineering[.]" This definition treats the word "engineer" as synonymous with "professional engineer" and "registered professional engineer." Or. Rev. Stat. § 672.002(2). In tandem with Or. Rev. Stat. § 672.045, which "prohibits a person from falsely representing that the person is a registered engineer," any person who refers to himself as an engineer without first acquiring a license violates Oregon law.

As a result, Or. Rev. Stat. § 672.007(1) and OAR 820-010-0730(3)(b) restrict Plaintiff's future conduct. Plaintiff plans to describe himself using the word "engineer" in multiple contexts, including in articles, his resume, his website, business cards, and at his planned seminars. (*See* Järlström Decl. ¶¶ 33-35.) Contrary to the Board's characterization, these plans are more than vague desires. (Def.'s Reply at 3.) Plaintiff has specified "when, to whom, where, or under what circumstances" he intends to violate the challenged laws. *Thomas*, 220 F.3d at 1139. Therefore, the record demonstrates that Plaintiff will engage in activities prohibited, at least in part, by Or. Rev. Stat. § 672.007(1) and OAR 820-010-0730(3)(b).

Turning to the likelihood of enforcement, the Board has previously communicated a specific warning or threat of enforcement with respect to Or. Rev. Stat. § 672.007(1). *See* Järlström Decl. Ex. 4, at 1 (citing Or. Rev. Stat. § 672.007(1)(a)-(c)); Ex. 11 at 1 (referencing "ORS 672.007(1)"). In addition, the Board's "history of past enforcement against parties similarly situated to [Plaintiff] cuts in favor of a conclusion that a threat is specific and credible." *Lopez*, 630 F.3d at 786-87. Although the Board has disavowed future enforcement and enacted

new regulations,[6] these commitments do not diminish the credibility of Plaintiff's concerns in light of the plain meaning of the text and context of Or. Rev. Stat. § 672.007(1)(a)-(b), and especially in light of the Board's history of overzealous enforcement actions. Having considered the relevant factors, the Court finds that Plaintiff's fear of future enforcement of Or. Rev. Stat. § 672.007(1)(a)-(b) and OAR 820-010-0730(3)(b) is credible. *See LSO*, 205 F.3d at 1155 (noting that "when the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing"). Accordingly, the Court concludes that Plaintiff has satisfied his burden of establishing standing with respect to these provisions.

### c. Overbreadth

Unlike the Practice laws, the Court finds that Plaintiff has demonstrated "a realistic danger" that the Title laws "significantly compromise recognized First Amendment protections of parties not before the Court," and therefore the Court determines it is appropriate to reach Plaintiff's facial challenge. *Vincent*, 466 U.S. at 801.

Under the First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech," which is "judged in relation to the statute's plainly legitimate sweep." *U.S. v. Williams*, 553 U.S. 285, 292 (2008). The "first step in overbreadth analysis is to construe the challenged statute." *U.S. v. Stevens*, 559 U.S. 460, 474 (2010). Second, courts inquire whether the statute punishes a substantial amount of protected activity. *See Williams*, 553 U.S. at 297. Finally, the Court considers whether the statute is

---

[6] The Board has promulgated new regulations with respect to the word "engineer." *See* Joint Stip. Facts ¶ 6 & Ex. 8, at 2 ("'Engineer', when used alone and not as part of the phrases 'professional engineer' or 'registered professional engineer'… refers to when the word 'engineer' is used to claim or imply that an individual is registered to perform engineering work in Oregon.").

"readily susceptible" to a limiting construction that would render it constitutional. *Va. v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (quotation marks omitted).

## 1. Construing the Title Laws

On their face, the Title laws restrict speech based on its content. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Here, Plaintiff wants to communicate a certain message, and "whether [he] may do so under [the Title laws] depends on what [he] say[s]." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010). Restricting who can say a particular word "draws distinctions based on the message a speaker conveys[.]" *Reed*, 135 S. Ct. at 2227. Such laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226. To avoid this presumption, the Board argues that the Title laws should be read as applicable only to people who solicit business by falsely or misleadingly claiming to be professional engineers in a commercial context. (Def.'s Mot. Summ. J. at 27.)

The Oregon Court of Appeals' decision in *Topaz v. Oregon Board of Examiners for Engineering and Land Surveying*, 255 Or. App. 138 (2013) forecloses this argument. In *Topaz*, a homeowner sent a letter to the Board complaining that the engineering department of the City of St. Helens had caused water damage to his home. His letter—signed with the letters "P.E."— contained detailed statistical analysis and proposed solutions. *Topaz*, 255 Or. App. at 141-42. The Oregon Court of Appeals held that using the "P.E." designation listed in Or. Rev. Stat. § 672.002(2) "fits the definition of practicing engineering under ORS 672.007(1)(a) and (c)." *Topaz*, 255 Or. App. at 147. The homeowner also violated Or. Rev. Stat. § 672.045(2) because

the legislature did not "attach a *mens rea* requirement to its prohibition on falsely representing the ability to practice engineering." *Id.* at 146. The *Topaz* court rejected the homeowner's argument that his conduct fell within two statutory exceptions for engineering exclusively on his own property and for engineering that is not offered to the public because sending a letter to an agency extended his work beyond his own property and directed it to the public. *Id.* at 147. Similarly here, Or. Rev. Stat. § 672.002(2) defines "engineer" as analogous to "professional engineer" and "registered professional engineer."[7] Thus, the use of the title "engineer" by a non-licensee violates Or. Rev. Stat. § 672.045(2), regardless of whether a person offers to provide engineering services and regardless of the context.

The Board asks the Court to disregard *Topaz* because (1) the plaintiff in that case failed to preserve his First Amendment argument; and (2) a federal court gives special weight only to interpretations by a state Supreme Court. (Def.'s Mot. Summ. J. at 29.) However, the Oregon Court of Appeals' interpretation of the Title laws binds this Court absent convincing evidence that the Oregon Supreme Court would rule otherwise. *See Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) ("In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."); *see also In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) (holding that it was bound to follow interpretation by intermediate courts "absent convincing evidence that the California Supreme Court would reject the interpretation"). The Court is not convinced that the Oregon Supreme Court would arrive at a different interpretation than the Oregon Court of Appeals, because an

---

[7] The Board acknowledges that the three terms mean the same thing under the Act. *See* Def.'s Reply In Supp. Mot. Summ. J. at 9) ("The term 'engineer' in the statute *means the exact same thing as a professional engineer and the exact same thing as a registered professional engineer.*") (emphasis in original).

alternative interpretation would require inserting a commercial speech limitation not currently found in the text. *See* Or. Rev. Stat. § 174.010 (providing that "[i]n the construction of a statute, the office of the judge is . . . not to insert what has been omitted, or to omit what has been inserted"); *see also Powell's Books v. Kroger*, 622 F.3d 1201, 1215 (9th Cir. 2010) (noting that courts "may not rewrite a state law to conform it to constitutional requirements") (citation and quotation marks omitted). The Title laws, as written, reach beyond purely commercial speech to encompass fully protected speech.[8]

### 2.      Threat to Protected Speech

So construed, the Title laws threaten a substantial amount of protected activity. First, the statutes prohibit truthfully describing oneself as an "engineer," in any context. This restriction clearly controls and suppresses protected speech, and enforcement of the statute against protected speech is not a hypothetical threat. The record before this Court demonstrates that the Board has repeatedly targeted individuals for using the title "engineer" in non-commercial contexts, including core political speech such as campaigning for public office and advocacy against a local ballot initiative. (Pl.'s Mot. Summ. J. at 6-11.) Unlike the Board's erroneous application of the Practice laws against Plaintiff, its enforcement of the Title laws against Plaintiff and others falls squarely within the text of the Title laws.

Second, while a state may regulate misleading commercial speech, the term "engineer," standing alone, is neither actually nor inherently misleading.[9] A statement is inherently

---

[8] While "the Supreme Court has stated that the overbreadth doctrine does not apply to regulations of purely commercial speech, an overbreadth challenge to a statute or regulation that reaches beyond purely commercial speech to encompass fully protected speech is appropriate." *Am. Acad. of Pain Mgmt. (AAPM) v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004) (citations omitted).

[9] Commercial speech that is actually or inherently misleading "may be prohibited entirely." *In re R.M.J.*, 455 U.S. 191, 203 (1982). However, "the States may not place an

misleading when "the particular method by which the information is imparted to consumers is inherently conducive to deception and coercion." *Peel v. Attorney Regulatory & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 112 (1990) (Marshall, J., concurring). "[C]ommercial speech that is devoid of intrinsic meaning may be inherently misleading, especially if such speech historically has been used to deceive the public." *Id.* There is also a difference "between statements of opinion or quality and statements of objective facts that may support an inference of quality." *Id.* at 101 (plurality opinion).

Here, calling oneself an "engineer" is "not an unverifiable opinion of the ultimate quality of a[n] [engineer's] work or a promise of success, but is simply a fact[.]" *Id.* Further, a term cannot become inherently misleading simply because a state deems it so. *See Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 308 (5th Cir. 2017) (holding that the title "specialist" cannot be inherently misleading simply "because it does not comply with the regulatory requirements imposed by the Board"); *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017) ("It is undoubtedly true that a state can propose a definition for a given term. However, it does not follow that once a state has done so, any use of the term inconsistent with the state's preferred definition is inherently misleading."). Nothing in the record suggests that using the term "engineer" in a commercial context inherently misleads consumers. *See Ibanez v. Florida Dep't of Bus. And Prof'l Reg.*, 512 U.S. 136, 145 (1994) ("Given the complete absence of any evidence of deception, the Board's concern about the possibility of deception in

---

absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive." *Id.* Although "the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception." *Id.*

hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment.").

The Board argues that courts have upheld similar restrictions on professional titles in other fields. (Def.'s Mot. Summ. J. at 27.) The word "engineer," however, is different than the other title restrictions courts have upheld in the past.[10] Unlike "M.D." or "certified public accountant," there is no fixed meaning to the title "engineer." On the contrary, there are many different types of engineers. Courts have long recognized that the term "engineer" has a generic meaning separate from "professional engineer," and that the term has enjoyed "widespread usage in job titles in our society to describe positions which require no professional training." *N.C. State Bd. of Registration for Prof'l Eng'rs & Land Surveyors v. Int'l Bus. Mach. Corp.*, 31 N.C. App. 599, 604 (1976); *see also Mo. Bd. for Architects Prof'l Eng'rs & Land Surveyors v. Earth Res. Eng'g, Inc.*, 820 S.W. 2d 505, 509 (Mo. Ct. App. 1991) ("Engineer is synonymous with such terms as conductor, driver, handler, operator, and pilot."). Indeed, many job descriptions contain the word "engineer" even though they do not require any professional engineering expertise or licensure. *See Int'l Bus. Mach.*, 31 N.C. App. at 605 (noting the proliferation of jobs that add the title, including "custodial engineers," "television engineer," "environmental engineering technician," and "ferry engineer").

_____

[10] *See Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 605 (4th Cir. 1988) (prohibiting a non-certified public accountant from "describ[ing] himself as or assum[ing]" any of several "titles or designations," including "certified public accountant, licensed accountant, licensed accountant, LA, registered accountant, RA, independent auditor, or auditor"); *see also Brandwein v. Cal. Bd. of Osteopathic Exam'rs*, 708 F.2d 1466 (9th Cir. 1983) (rejecting a First Amendment challenge brought by a doctor to a California law banning osteopathic physicians from using the title "M.D."); *Maceluch v. Wysong*, 680 F.2d 1062, 1068-69 (5th Cir. 1982) (upholding a Texas statute that prohibited osteopathic physicians from representing themselves as an "M.D.").

The Board cites two state court cases in support of its argument that the word "engineer" is inherently misleading. *See Van Breeman v. Dep't of Prof'l Regulation*, 296 Ill. App. 3d 363, 364-67 (1998); *Snell v. Engineered Sys. & Designs Inc.*, 669 A.2d 13, 16-19 (Del. 1995). In *Van Breeman*, the Illinois Court of Appeals held that a letter and resume that touted the plaintiff's educational background and abilities was inherently misleading. Tellingly, the *Van Breeman* court did not hold that the word "engineer" by itself was inherently misleading. Instead, it focused on the context in which the word appeared: "We conclude that *plaintiff's literature* is not only potentially misleading, it is, in fact, inherently misleading." *Van Breeman*, 296 Ill. App. at 367 (emphasis added). In *Snell*, the Supreme Court of Delaware expressly recognized the constitutional problem associated with broad prophylactic restrictions on speech. *See Snell*, 669 A.2d at 20 ("If the statute were construed to provide that any person's belief that [defendant's] use of 'engineered' is misleading, no matter how irrational or unreasonable that belief may be, the statute could run afoul of the First Amendment."). The *Snell* court declined to reach the constitutional question by narrowly construing its engineering title statute as being "violated only if there is proof that the use of 'engineered' . . . would leave *a reasonable person* to believe that the defendant is holding itself out as engaging in the practice of engineering." *Id.* (emphasis in original). Such a narrowing construction is not an option here because, as previously discussed, this Court is bound by the construction articulated in *Topaz*.

Even if the term "engineer" qualifies as *potentially* misleading commercial speech, the Title laws fail the test articulated in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980), to regulate commercial speech. Under *Central Hudson*, the Board must: (1) assert a substantial interest in support of its regulation; (2) demonstrate that the restriction on commercial speech directly and materially advances that interest; and (3) establish that the

regulation is not more extensive than is necessary to serve that interest. *Central Hudson*, 447 U.S. at 566. It is well settled that states have a substantial interest in preventing deceptive or misleading commercial speech.

Turning to *Central Hudson*'s second prong, the Board must demonstrate that the challenged regulation "advances the government's interest in a direct and material way." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (citation and quotation marks omitted). The Board justifies the Title laws only by arguing that the term "engineer" is misleading, but nothing in the record supports the conclusion that a reasonable person would assume that an individual who calls herself an "engineer" is necessarily a registered professional engineer. As the Supreme Court has explained, "the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 646 (1985).

Finally, the Board cannot meet its burden under the third prong of *Central Hudson*. In regulating potentially misleading speech, the Board is only entitled to "enact measures short of a total ban to prevent deception or confusion." *Peel*, 496 U.S. at 116. "[B]road prophylactic rules may not be so lightly justified if the protections afforded [to] commercial speech are to retain their force." *Zauderer*, 471 U.S. at 649. Thus, courts must be vigilant not to "allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Ibanez*, 512 U.S. at 146 (citations omitted). Although states "may regulate commercial speech, the First and Fourteenth Amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests." *R.M.J.*, 455 U.S. at

207. "The absolute prohibition on [non-licensees'] speech, in the absence of a finding that [this] speech [is] misleading, does not meet these requirements." *Id.* The regulation of the title "engineer" is more burdensome than necessary to protect the public from the unlicensed practice of engineering.

### 3.    Summary

The Title laws restrict constitutionally protected speech. While the Court need not reach the question of whether the Title laws are invalid in every application, the Title laws prohibit a substantial amount of protected speech. The record demonstrates that the threat to free expression is not merely hypothetical. Therefore, "from the text of [the law] and from actual fact," the Court holds that the Title laws are substantially overbroad in violation of the First Amendment. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quotation marks omitted).

### d.    Severability

The Court turns next to whether the offending provisions of the Title laws may be severed. *See Brockett*, 472 U.S. at 504 (emphasizing that, absent "countervailing considerations," a statute should "be declared invalid to the extent it reaches too far, but otherwise left intact").

Federal courts apply state law when determining whether a state statute is severable. *See Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir. 2008) ("[W]hen the constitutionality of a state statute is challenged, principles of state law guide the severability analysis and [courts] should strike down only those provisions which are inseparable from the invalid provisions."). Under Oregon law, an invalid portion of a statute is presumed to be severable, which may be overcome only if (1) the enactment provides that the remaining parts shall not remain in effect; (2) the remaining parts are so dependent on the invalid part that the remaining parts would not have been enacted without the invalid part; or (3) the remaining parts,

standing alone, are incomplete and incapable of being executed in accordance with legislative intent. *See* Or. Rev. Stat. § 174.040.

Here, there is no express provision in the Title Laws addressing severability. The term "engineer" is neither integral nor indispensable to the broader goal of combating deceptive or misleading speech. Therefore, there is an easy fix to this First Amendment problem: strike the word "engineer" from Or. Rev. Stat. § 672.002(2) and Or. Rev. Stat. § 672.007(1)(b). Plaintiff invites this remedy by focusing his challenge on the Title laws' use of the word "engineer." (Pl.'s Mot. Summ. J. at 27.) Accordingly, the term "engineer" should be stricken from these subsections, leaving the remainder of the Act intact: Or. Rev. Stat. § 672.002(2) ("~~Engineer~~, 'professional engineer' or 'registered professional engineer' means an individual who is registered in this state and holds a valid certificate to practice engineering in this state as provided under ORS 672.002 to 672.325."); Or. Rev. Stat. § 672.007(1)(b) ("A person is practicing or offering to practice engineering if the person . . . [t]hrough the use of some other title implies that the person is ~~an engineer or~~ a registered professional engineer[.]").[11]

### B. Permanent Injunction

Plaintiff also asks the Court to convert the agreed-upon preliminary injunction into a permanent injunction. (Pl.'s Mot. Summ. J. at 34-35.) "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010). The plaintiff must show: (1) that he has suffered an irreparable injury; (2) that remedies at law are inadequate to compensate for that injury; (3) that the balance of hardships tips in favor of the plaintiff; and (4) that the public

---

[11] OAR 820-010-0730(3)(a) provides that "no persons may . . . [h]old themselves out as an 'engineer' other than as described in subsection (1) if this rule or in ORS 672.060[.]" This provision must be struck entirely because it is rendered meaningless without the word "engineer."

interest would not be harmed by the permanent injunction. *Id.* A court usually conducts an evidentiary hearing before converting a preliminary injunction into a permanent injunction, but it is not necessary "when the facts are not in dispute." *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988).

The Board does not dispute that Plaintiff is entitled to a permanent injunction, objecting only to the inclusion of the word "paid" in the injunction language and to the use of the word "engineer" for commercial purposes. (Def.'s Reply at 11-12; Def.'s Sur-Response at 2.) At oral argument, Plaintiff acknowledged that the word "paid" may be excised from the preliminary injunction. Having concluded that the restriction on the title "engineer" is overbroad, the Court will not exclude this word from the permanent injunction. Accordingly, the Court converts the preliminary injunction entered on May 30, 2017, into a permanent injunction (except as modified herein).

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (ECF No. 72), and GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 79), and ORDERS the following relief:

A.  Declaratory Relief. The Court hereby declares that (i) Or. Rev. Stat. § 672.020(1), Or. Rev. Stat. § 672.045(1)-(2); and OAR 820-010-0730(a) and (c) violate the First Amendment as applied to Plaintiff, and (ii) Or. Rev. Stat. § 672.002(2), Or. Rev. Stat. § 672.007(1)(b), and OAR 820-010-0730(3)(a) violate the First Amendment on their face.

B.  Injunctive Relief. The Court hereby converts the previously-entered Preliminary Injunction into a Permanent Injunction, as follows:

1.   Plaintiff Järlström may study, communicate publicly about, and communicate privately about, his theories relating to traffic lights as long as Plaintiff Järlström's communications occur outside the context of an employment or contractual relationship relating to the timing of traffic lights with a governmental or other entity that changes or implements or has final approval to change or implement traffic-light timing without the review and acceptance of responsibility by an Oregon-licensed professional engineer.

2.   Plaintiff Järlström may describe himself publicly and privately using the word "engineer."

3.   The Board shall not enforce the Professional Engineer Registration Act, Or. Rev. Stat. § 672.002-672.325, *et seq.*, or any implementing regulations, against Plaintiff Järlström for having engaged in the activities described in Paragraph 1 or Paragraph 2 above.

**IT IS SO ORDERED.**

DATED this 28th day of December, 2018

_____
STACIE F. BECKERMAN
United States Magistrate Judge